## JOHN WILBURN, Appellant, v. TERRITORY OF NEW MEXICO, Appellee.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—INDICTMENT—LARCENY—DESCRIPTION.—An animal stolen, being described in the indictment as a cow, such description is sufficient to support a conviction under section 79, C. L. of N. M., 1897, making it an offense to steal, etc., any neat cattle, etc.

2. PRACTICE—CRIMINAL LAW—SELECTION OF JURY—CHALLENGE—DISCRETION OF COURT.—Where a challenge for cause of a juror upon the ground of prejudice or bias against defendant is tried by the court, its decision rests upon a sound discretion, and there being evidence to support the conclusion of law, the judgment of the court thereon will be sustained.

3. CRIMINAL LAW—LARCENY—ASPORTATION—EVIDENCE OF.—The element of asportation in the statutory crime of neat cattle, is proven by evidence showing that defendant had driven the animal a distance of about 600 yards, then killed it and removed and carried away the hide and other parts of the animal, thereby depriving the owner of the immediate possession of it.

4. CRIMINAL LAW—PRACTICE—ALIBI—BURDEN OF PROOF.—The burden of proving an alibi is upon the defendant, after the Territory has made out a prima facie case, to the extent, at least, of raising a reasonable doubt of guilt. `

5. CRIMINAL LAW—LARCENY OF LIVE STOCK—STATUTE THAT APPLIES. Held: That sections 15 and 16, chapter 47, Laws of 1884 (sections 79 and 80, C. L. of 1897), are parts of a special act, enacted for the protection of live stock, and provide that a person convicted thereunder shall be deemed guilty of a felony and grand larceny, and be subject to punishment in the penitentiary and by fine, notwithstanding the value of the animal stolen is less than twenty dollars, and are not repealed by section 8, chapter 80, Laws of 1891 (section 1187, C. L. 1897), which is part of a general act defining the punishment of the crime or larceny, graded according to the value of the property stolen.

*Appeal* from the District Court of Colfax County, fourth Judicial District. Affirmed.

Facts are stated in the opinion.

E. V. LONG and L. C. FORT for appellant.

EDWARD L. BARTLETT, Solicitor General, for appellee.

CRUMPACKER, J.—At a special term of the district court of the fourth judicial district of the Territory of New Mexico, within and for the county of Union, the defendant, John Wilburn, on the first day of July, 1897, was indicted by the grand jury of said district court, said indictment charging "that said John Wilburn, in the said county and Territory, one cow, of the value of twenty-five dollars, of the goods, property and chattels of Candido Garcia, feloniously and unlawfully did steal, take and drive away, contrary to the form of the statute in such cases made and provided." Upon arraignment the defendant pleaded not guilty, and the case having been removed to Colfax county, the defendant was there placed upon his trial, and was found guilty as charged in the indictment and sen-

tenced by the court to five years imprisonment in the Terri-
torial penitentiary and to pay a fine of one thousand dollars.
From the judgment and decision of said court the defendant
has appealed to this court assigning 19 errors, which may all
be disposed of in the consideration of the following points dis-
cussed in appellant's brief. First—That the indictment was
fatally defective in not charging any crime against the laws of
the Territory. Second—That the court erred in overruling ap-
pellant's challenge to juror J. H. Smith and in allowing him to
sit as a juror in the case. Third—That there was no evidence
to sustain the verdict and that improper evidence was admitted
and proper evidence excluded on the trial. Fourth—That the
court erred in its instructions in regard to larceny and also in
regard to the defense of an alibi; and, Fifth—That the court
erred in sentencing defendant, the law limiting the punishment
in this case to imprisonment in the county jail. These will be
considered here in the above order.

1. Passing over appellee's objections to our considera-
tion of the question of the sufficiency of the indictment, we find
the word "cow," as used in the indictment, to be used in its
general and ordinary sense, meaning the ma-
ture female of bovine animals. Under sec-
tion 67, C. L. 1897, the description in an indict-
ment laid under section 79, C. L. 1897, of an
animal of the bovine kind, is sufficient. Cow,
being of such kind, and a sufficient term, the
objection to the indictment was properly overruled. Territory
v. Christman (N. M.), 58 Pac. 343.

2. The grounds of objection to juror Smith were that he
was a member of an association organized for the prosecution
of parties suspected of the larceny of cattle,
and that he subscribed money for the purpose
of prosecuting people charged with that crime,
or suspected of the crime of larceny of animals.
The challenge was tried by the court, and its
decision rests upon a sound discretion, and un-
less it appear from the evidence that the court abused its dis-
cretion, its action thereon must be sustained. The evidence
appearing in this record upon the trial of the challenge clearly

*Margin notes:*
CRIMINAL law: indictment: larceny: description.

PRACTICE: criminal law: selection of jury: discretion of court.

warrants the conclusion of law to support the judgment of the court thereon.

3.   All the material questions raised under the fourth point, are disposed of in considering appellant's contention of no asportation proven.   The Territory proved that appellant was seen driving this cow; that he was seen to drive it a distance of about 600 yards, that CRIMINAL law: a shot was then heard, and that in a very, asportation: evidence of. short space of time thereafter appellant was again seen in the act of skinning the cow, and that the carcass of the animal was afterward discovered with the skin and other parts of the animal removed. Appellant's counsel argued that because this driving and skinning of the cow took place within the pasture of appellant's employer, where it is contended "the cow was by the consent of its owner," the territory has not found any taking in any legal sense, and his counsel ask: "Was not that cow lying there dead at all times from the moment she fell to the time when this indictment was found, two years later, in the possession of the owner as much as while she was in his pasture alive?"   While we do not find any evidence in the record that the cow was by its owner's consent in the pasture of appellant's employer, still, upon the statement of facts recited in appellant's brief, we must conclude that the driving of the animal and carrying away of parts of it, thereby depriving the owner of the immediate possession of it, was such a taking by appellant, as, in view of the felonious intent shown by the evidence in this case, would constitute the element of asportation in the statutory crime of larceny of neat cattle.   This is too plain to require citation of authorities.

4.   On the trial the appellant introduced evidence tending to support an alibi, and the court in the ninth instruction instructed the jury as to the law thereon.   The appellant objects to that part of the instruction whereby the jury were told that the burden of proof is upon the CRIMINAL law: defendant to prove an alibi.   By the same in- practice: alibi: struction the court instructed the jury that burden of proof. "when the proof is in, then the primary question is (the whole evidence being considered,

both that given by the defendant and the Territory) is the de-
fendant guilty beyond a reasonable doubt. The law being that
when the jury have considered all the evidence as well that
touching the question of the alibi as the criminating evidence
introduced by the prosecution—then if they have any reason-
able doubt of the guilt of the accused of the offense with which
he stands charged, they shall acquit him, otherwise not." Sim-
ilar instructions have been sustained in this court in the cases.
of Trujillo v. Territory, 7 N. M. 44, and Borrego v. Territory,
8 N. M. 477, and in many of the states. But conceding the cor-
rectness of the rule as contended for by appellant's counsel, it
is manifest that the term, burden of proof, as used in this in-
struction, and as it so frequently is used in many of the deci-
sions and by some text writers—does not imply that the de-
fendant must prove his defense by such evidence as will satis-
fy a jury that his defense is true, but only that after the Terri-
tory has made out its case, it devolves upon the accused to in-
troduce evidence, if he has any, to prove his alibi, if he relies
upon such a defense. In that sense the burden is upon the ac-
cused, and in order to maintain it he is bound to establish in its
support such facts and circumstances as are sufficient when
considered in connection with all the other evidence in the case
to create in the minds of the jury a reasonable doubt of his
guilt. Carlton v. People, 150 Ill. 181. Certainly no fairly in-
telligent jury could have understood the charge of the court in
any other sense when they were instructed by the court in the
same connection, "that when the proof is all in then the pri-
mary question is—the whole evidence being considered, both
that given for the defendant and the Territory—is the defend-
ant guilty beyond a reasonable doubt?" We are aware that the
expression, "the burden of proof is upon the defendant to make
out his proof of an alibi" has been criticized by a few courts
and text writers. Bish. Crim. Proc., Sec. 1066. But when these
cases are carefully considered it will be seen that the criticism
has no application to the expression as used by the court in the
case at bar. State v. Thornton, 41 L. R. A. 530; State v. Ma-
hey, 74 Io. 77; 37 N. W. 2. Therefore taking the ninth instruc-
tion given by the court as a whole, it is correct and covers the
whole ground. It expressly leaves the question of reasonable

doubt of defendant's guilt for the jury to determine upon all the evidence in the case.

5.   The accused was indicted and convicted under section 15, chapter 47, Laws of 1884 (section 79, C. L. 1897), the indictment alleging the value of the animal stolen at $25.   That

CRIMINAL law: larceny of live-stock: statute that applies.

section, so far as material here, is as follows: "Any person who shall steal, embezzle, or knowingly kill, sell, drive, lead, or ride away, or in any manner deprive the owner of the immediate possession of any neat cattle, horse, mule, sheep, goat, swine, or ass....shall be deemed guilty of a felony and on conviction thereof in any court of competent jurisdiction shall be punished by imprisonment not less than one year nor more than five years, and by a fine not less than $500 nor more than $5,000, at the discretion of the court."

Section 15 of the said act (section 80, C. L. 1897) provides further as follows:   "...In all cases of felonious taking, stealing, riding, driving, leading and carrying away any animal or animals herein referred to, the same shall be deemed and taken to be and the courts of this Territory shall construe the same to be grand larceny, subjecting the offender to be committed to the penitentiary for a term of not less than one year nor more than ten years, except as otherwise provided in this act, notwithstanding the value of such animal or animals may be less than twenty dollars."   Section 8, of the Laws of 1891, chapter 80 (C. L. 1897, section 1187), is as follows: "Every person convicted of the crime of larceny or of the crime of embezzlement or of the crime of feloniously receiving stolen goods or property, shall be punished by imprisonment in the Territorial penitentiary not less than one year nor more than ten years, if the value of the property stolen, embezzled or feloniously received shall exceed twenty-five dollars; and by imprisonment in the county jail not more than six months or by fine not exceeding two hundred dollars or by both such fine and imprisonment, if the value of such property shall be twenty-five dollars or less."   It is urged that the former provision was repealed by the latter and that the value of the property stolen being no greater than twenty-five dollars, the maximum

sentence that could legally have been imposed was six months imprisonment in the county jail and a fine of two hundred dollars. It is a well established rule of statutory construction that in the absence of a repealing clause expressly designating the prior enactment intended to be abrogated no new statute will be allowed to sweep away existing legislation unless its terms are such that the new and the old can not consistently stand together. Repeals by implication are not favored; and this is true in the case of penal laws as well as in the case of those of a strictly civil and private character. The legislature is considered to have had clearly before its attention the whole body of the law; and, so far from assuming that the law givers designed tacitly to override and abrogate existing acts, courts will, prima facie, presume that such a design if it had existed, would have been clearly and definitely expressed, in unambiguous words, and will endeavor to construe the new enactment in harmony with the old. Sedg. on Stat. Const. & Const. Law, p. 127; Bishop on the written laws, section 154; "The question of repeal is largely one of intent, and if the two statutes can stand, and both have effect, they must be allowed to do so." People v. Gustin, 57 Mich. p. 407; Dolan v. Thomas, 12 Allen 421; State v. Alexander, 14 Rich. 247. "It is necessary to the implication of a repeal that the objects of the two statutes be the same. If they are not both will stand, though they may both refer to the same subject." U. S. v. Claflin, 97 U. S. 546; People v. Platt, 67 Cal. 22; Cohill v. State, 37 Ind. 111. Having already given its attention to the particular subject and provided for it, the Legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment unless that intention is manifested in explicit language, or there be something which shows that the intention of the Legislature had been turned to the special act, and that the general one was intended to embrace the special cases within the previous one; or something in the nature of the general one, making it unlikely that an exception was intended as regards the special act. The general statute is read as silently excluding from its operation the cases which have been provided for by the special one. The fact that the general act contains a clause repealing acts inconsistent with it does not

diminish the force of this rule of construction.  Endlich Int. Stats., section 223; Bishop Stat. Crimes, section 151.  The section we have quoted from the laws of 1891, is part of a statute of a very general nature, defining the crime of murder, its elements, degrees and punishments; the punishments for the crime of larceny, embezzlement and feloniously receiving stolen goods, graded according to the value of the property stolen; the punishments for the crimes of robbery and burglary, and providing generally regarding the duties and functions of court and jury relative to its imposition of sentences and their recommendation of clemency.  The evident purpose of this legislation was to make certain broad and far-reaching amendments of the general criminal law.  On the other hand, it is perfectly clear that the object of the older act was not to prevent larceny in general, but to protect the ownership of a certain class of property, its title being "An act for the protection of livestock and other purposes," and pertaining to no other subject than livestock.  We suppose that in the opinion of the Legislature the earlier act was needed, either to prevent a kind of thefts peculiarly easy of commission and difficult of discovery and punishment, or to afford special protection to the important industry of stockraising, or that the act was based upon both these considerations; and we must presume, that, in the passage of the later crimes act, there was no intention to do away with this existing act, designed to effectuate a special purpose.

There being no reversible error in the judgment of the court below, its judgment of conviction, is therefore affirmed.

Parker and McFie, JJ., concur.