2001-NMCA-002

16 P.3d 1105

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Paul PEREA, Defendant–Appellant.**

**No. 20,382.**

Court of Appeals of New Mexico.

Nov. 13, 2000.

Certiorari Granted, No. 26,685, Jan. 9, 2001.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

KENNEDY, Judge.

{1} Defendant Paul Perea appeals his conviction for "Contributing to delinquency of minor" (CDM), a fourth degree felony pursuant to NMSA 1978, § 30–6–3 (1963, as amended through 1990). He argues that he should have been convicted of the more specific misdemeanor crime of "Selling or giving alcoholic beverages to a minor; possession" pursuant to NMSA 1978, § 60–7B–1 (1993, as amended through 1998). In light of the Supreme Court's latest case on this issue, we reject Defendant's contentions.

{2} Defendant also argues that insufficient evidence supported his conviction; that showing the jury and later admitting a photograph depicting the injury to the youth whose face he was charged with cutting was reversible error; that disclosure of his previous conviction for manslaughter was reversible error; that the combined effect of all of the errors resulted in cumulative error; that the CDM statute is unconstitutionally vague; and that he received ineffective assistance of counsel. Not persuaded by Defendant's arguments, we affirm his conviction.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

{3} On May 10, 1997, Defendant arrived early at the Fernandez household for sixteen-year-old Julie Fernandez's birthday party. Julie's seventeen-year-old brother, Manuel, had been at the house all day. He had been drinking beer and punch spiked with Everclear. After the other guests arrived, Defendant accompanied Manuel and two other minors to a store to buy more alcohol.

When they arrived at the store, Defendant purchased alcohol. There is conflicting evidence as to whether Manuel accompanied Defendant into the store. Once the group arrived back at the house where the party was underway, Manuel carried the alcohol into the house and drank some of it.

{4} The jury convicted Defendant of CDM after being instructed that the State had to prove the following elements beyond a reasonable doubt:

1. The defendant, Paul Perea, agreed to obtain alcoholic beverages for Manuel Fernandez;

2. This caused Manuel Fernandez to commit the offense of Minor in Possession of Alcoholic Beverages, which makes it a violation of law for a minor to buy, attempt to buy, receive, possess, or permit himself to be served with alcoholic beverages;

3. Manuel Fernandez was under the age of 18;

4. This happened in New Mexico on or about the 10th day of May, 1997.

{5} Defendant was also charged with Aggravated Battery. This charge arose from an argument in the car between Manuel and another of the minors (Santana) on the return trip from buying the liquor. The argument concerned Manuel's belief that he had paid a disproportionate share of the money for the liquor compared to Santana. In the course of the argument, Defendant is alleged to have cut Santana's face with a knife. When the group returned to Manuel's house, Santana was taken to the hospital, and the party continued.

{6} At trial, the prosecution entered a photograph of Santana's cut face into evidence. It also stated in its closing argument that Defendant was "a convicted felon, charged with a serious violent offense." The jury convicted Defendant of CDM and hung on the Aggravated Battery charge. This appeal followed.

## DISCUSSION

### Contributing to the Delinquency of a Minor

#### A. Preservation of General/Specific Argument

{7} The general/specific rule states that if one statute deals with a subject in general and comprehensive terms, and another statute addresses part of the same subject matter in a more specific manner, the latter controls. *See State v. Cleve,* 1999–NMSC–017, ¶ 17, 127 N.M. 240, 980 P.2d 23. If both a general and a specific statute address the same criminal conduct, the specific statute should govern " 'to the extent of compelling the state to prosecute under [it].' " *Id.* (quoting *State v. Blevins,* 40 N.M. 367, 369, 60 P.2d 208, 210 (1936)).

{8} Defendant did not make the general/specific argument to the district court, but instead raises it for the first time on appeal. To bring his claim before this Court, Defendant relies on *State v. McNeece,* 82 N.M. 345, 481 P.2d 707 (Ct.App.1971), in which we found the district court had wrongly convicted the defendant under the "inapplicable general statute" instead of a more specific statute for possession of marijuana. *Id.* at 345, 481 P.2d at 707. We found that "conviction and sentence of [a] defendant under an inapplicable statute [is] a question of jurisdiction" that may be raised for the first time on appeal. *Id.* at 346, 481 P.2d at 708. *McNeece* and its jurisdictional emphasis may have been superceded: the Supreme Court may have since removed this sort of case from the umbrella of jurisdictional error. *See State v. Orosco,* 113 N.M. 780, 782–83, 833 P.2d 1146, 1148–49 (1992). Error that was formerly described as jurisdictional will now be permitted to be raised for the first time on appeal when it falls under the definition of "fundamental" error, such as when there is a miscarriage of justice, when the question of guilt is so doubtful that it would shock the conscience of the court to allow the conviction to stand, or when substantial justice has not been done. *See id.* at 784, 833 P.2d at 1150. In our view, even if not jurisdictional, permitting a criminal conviction under a statute that the Legislature did not intend to apply to a particular set of facts and under a statute that exacts substantially greater punishment than the Legislature intended is precisely the sort of situation in which there would be a miscarriage of justice and in which substantial justice would not be

done. Under current case law, it may be more appropriate to define the error that results from a conviction under a general rather than a specific statute as fundamental error. Both jurisdictional error and fundamental error may be raised for the first time on appeal, and therefore we address Defendant's general/specific argument on its merits. *See* Rule 12–216 NMRA 2000 (allowing the appellate court to consider jurisdictional questions, or in its discretion, questions involving fundamental error despite the fact that they were not preserved at the district court level).

### B. Application of the General/Specific Rule

{9} In *Cleve*, 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23, the Supreme Court recapitulated the reasoning of the prior decision in *State v. Yarborough*, 1996–NMSC–068, ¶¶ 26–29, 122 N.M. 596, 930 P.2d 131 (holding that the New Mexico Legislature "intended to preempt involuntary manslaughter when the predicate offense is a misdemeanor contained within the Motor Vehicle Code"). The *Cleve* Court stated that "an inquiry under the general/specific statute rule should always focus primarily on whether the Legislature intended that the specific law operate as an exception to the general law and whether the Legislature intended that certain criminal conduct be charged under one special law to the exclusion of other more general laws." *Cleve*, 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23. This rule has subsequently been further refined by the Supreme Court in *State v. Guilez*, 2000–NMSC–020, 129 N.M. 240, 4 P.3d 1231. We undertake this second analysis following *Guilez*' clarifications. *See State v. Davis*, 2000–NMCA–105, ¶¶ 3–9, 129 N.M. 773, 14 P.3d 38 [Ct.App. 2000] (being another case, like this one, holding that the general/specific rule does not apply, and thereby indicating that *Cleve* may be a rather unique situation).

{10} In analyzing whether the general/specific rule is applicable, the first step is comparing the elements of the statutes at issue. *See Cleve*, 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23, . *Guilez* refers to this as the "quasi-double-jeopardy

analysis." *Id.* ¶¶ 9–10. If the elements of prohibited conduct are the same, the general/specific rule applies and the state must charge the defendant under the more specific of the two statutes absent express legislative intent to the contrary. *See Cleve*, 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23 (citing *Blevins*, 40 N.M. at 369–70, 60 P.2d at 210; *Wilburn v. Territory*, 10 N.M. 402, 407–09, 62 P. 968, 970–71 (1900), *overruled sub silentio on other grounds by Tais v. Territory*, 14 N.M. 399, 94 P. 947 (1908)). According to *Cleve*, courts should also invoke the rule of lenity, which favors applying the general/specific rule in cases of ambiguity, tempering it with the judiciary's longstanding deference to prosecutorial discretion which favors exercise of caution before applying the general/specific rule. *See id.* ¶ 26.

{11} To determine whether the general/specific rule is applicable in the case at bar, we first compare the statutes at issue. Section 30–6–3 states:

Contributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years.

Whoever commits contributing to the delinquency of a minor is guilty of a fourth degree felony.

{12} Contributing to the delinquency of a minor requires causing or having the tendency to cause the delinquency of a minor. "Delinquent act" is defined by the Children's Code:

A. "delinquent act" means an act committed by a child that would be designated as a crime under the law if committed by an adult, including the following offenses:

. . . .

(2) buying, attempting to buy, receiving, possessing or being served any alcoholic liquor or being present in a licensed liquor establishment, other than a restaurant or a licensed retail liquor establishment, except in the presence of the child's

parent, guardian, custodian or adult spouse.

Section 32A–2–3(A).

The Liquor Control Act specifies:

A. It is a violation of the Liquor Control Act for a person, including a person licensed pursuant to the provisions of the Liquor Control Act, or an employee, agent or lessee of that person, if he knows or has reason to know that he is violating the provisions of this section, to:

(1) sell, serve or give alcoholic beverages to a minor or permit a minor to consume alcoholic beverages on the licensed premises;

(2) buy alcoholic beverages for or procure the sale or service of alcoholic beverages to a minor;

(3) deliver alcoholic beverages to a minor; or

(4) aid or assist a minor to buy, procure or be served with alcoholic beverages.

Section 60–7B–1.

█ {13} We must also look for extrinsic evidence of legislative intent to limit prosecutorial discretion in selecting charges for the specific criminal conduct. In *Cleve,* the Supreme Court analyzed the purpose of the game and fish laws and the regulatory scheme implementing those laws. *See id.* ¶¶ 33–36. The Court held that the comprehensive nature of the game and fish laws with respect to hunting activity demonstrated a legislative intent to preempt application of the cruelty to animals statute to the hunting of game animals. *See id.* ¶¶ 35–36.

{14} When this Court recently attempted to follow *Cleve* in *State v. Guilez,* 1999–NMCA–127, ¶ ¶ 10–12, 128 N.M. 93, 990 P.2d 206, *rev'd,* 129 N.M. 240, 4 P.3d 1231, 2000–NMSC–020, we relied on *Cleve*'s statement that, "where there are two statutes proscribing the same conduct and one involves the operation of a motor vehicle addressed by the Motor Vehicle Code, the Legislature's enactment of a comprehensive Motor Vehicle Code indicates 'a legislative intent to preempt the field.'" *Guilez,* 1999–NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206. In its reversal, the Supreme Court disagreed with the finding while maintaining the analysis.

*Guilez* discusses conflicting laws (two laws proscribing the same conduct) requiring analysis to determine legislative intent, particularly where the more general statute would "include" the same matter as the special act. *See Guilez,* 2000–NMSC–020, ¶ 15, 129 N.M. 240, 4 P.3d 1231. The question becomes one of whether the legislature intended to partially repeal the CDM statute when it enacted the Liquor Control Act provisions.

{15} In comparing the CDM and Liquor Control statutes as they apply to this case, the elements are not entirely the same. CDM is the more severe and general of the two. CDM requires proof that the defendant contributed to the minor's delinquency while Section 60–7B–1(A)(2) does not; and CDM defines a minor as under the age of 18 while Section 60–7B–1(E) defines a minor as under the age of 21. CDM is a fourth degree felony with a basic sentence of 18 months. *See* § 30–6–3; NMSA 1978, § 31–18–15(A)(6) (1994). In contrast, a violation of Section 60–7B–1(D) is a misdemeanor with a maximum punishment of a $1000 fine and 30 hours of community service for the first offense. *See also* § 60–7B–1(F)(1).

{16} In our search for legislative intent, we are aided by the Supreme Court's holding in *State v. Cuevas* that CDM for providing liquor to minors could be charged separately from the underlying violation of the liquor law because CDM prohibits the commission of acts by adults that would foster delinquency—a different goal than the liquor statutes. *See* 94 N.M. 792, 794, 617 P.2d 1307, 1309 (1980), *overruled on other grounds by State v. Pitts,* 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) (holding that a minor can be convicted of contributing to the delinquency of a minor).

{17} The statutes have been amended since *Cuevas,* and the Supreme Court has revisited the subject in *Cleve.* Operationally in this case, the predicate act for CDM is defined in exactly the same language in both the definition of "delinquent act" under the Children's Code and the Liquor Control statute. The purposes of the statutes, however, are manifestly different.

{18} The Liquor Control Act, NMSA 1978, § 60–3A–2(A) (1981) states "that the sale, service and public consumption of alcoholic beverages in the state shall be licensed, regulated and controlled so as to protect the public health, safety and morals of every community in the state." *See also* NMSA 1978, § 60–3A–1 (1981, as amended through 1984); *and* 60–7B–1(A). The previous Liquor Control Act "was enacted as comprehensive legislation to regulate and control the sale of alcoholic beverages." *Drink, Inc. v. Babcock*, 77 N.M. 277, 282, 421 P.2d 798, 801 (1966).

{19} *Guilez* clarifies the necessary distinction in this case. The question of whether the legislature intended to preempt one statutory scheme in favor of another must be evaluated. *See Guilez*, 2000–NMSC–020, ¶ 11, 129 N.M. 240, 4 P.3d 1231. When regarding the distinction between the seemingly identical liquor statutes and contributing statutes, we cannot ignore *Cuevas*. *Cuevas* is still good law in clearly setting out the intention of the CDM statute and its applicability. It has not been overtaken in the last twenty-two years in this particular area by the Legislature. *See State v. Barr*, 1999–NMCA–081, ¶ 22, 127 N.M. 504, 984 P.2d 185 ("Contrary to the suggestion of the State on appeal, we believe *Cuevas* remains good law and has not been 'overtaken.' "). Quite simply, the CDM statute exists for a broader and more distinct purpose than the liquor statute-preventing the fostering of delinquency in New Mexico's youth, not just prohibiting the procurement of some Smirnoff vodka and a six-pack of beer. Contrary to Defendant's contention, *Cuevas* withstands scrutiny and filtering through the lenses of *Cleve* and *Guilez*.

### Substantial Evidence

{20} In reviewing this issue, we evaluate whether a rational jury could have found beyond a reasonable doubt that the essential facts in evidence proved Defendant guilty of CDM. *See, e.g., State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We view the evidence in the light most favorable to sustaining the verdict. *See id.* In this case, three minors went with Defendant to a liquor store. They gave him money and liquor was obtained. On the way home, a fight ensued over the share of the money paid for the liquor. Manuel tried to get more money from Santana for his share. A jury could find that this indicated a much more personal interest on Manuel's part than his contextually inconsistent assertion that his dad had provided the beer money. A jury also had to resolve the inconsistent action of buying vodka with beer money.

{21} The defense argues that the fight over money between Manuel and Santana indicated a likelihood that the liquor was for the party, not for them. This is specious logic. The *actus reus* of the CDM charge is buying liquor for minors. The eventual use of the liquor is irrelevant. Manuel admitted drinking the "jungle juice" at the party prior to leaving to buy liquor, also testifying that upon his return he drank some of the vodka bought on the trip. Based on this evidence, the jury could properly conclude that Defendant bought the liquor for the minors.

### Admission of Photograph

{22} Defendant argues that he was unfairly prejudiced when the prosecutor waved a photograph of Santana's face (slashed from forehead to nose-tip) before the jury during his opening statement. The context for the opening statement was that Defendant had severely slashed the boy's face. Defendant was charged with aggravated battery for the slashing. The photograph was about 3x5 inches in size and displayed about eight feet from the jury. Defendant moved for a mistrial, which was denied on the grounds that the photograph was relevant to the charge of aggravated battery and the small size of the photograph and distance from the jury diminished its impact. The photograph was later admitted at trial over objection. Defendant argues that the jury, while not convicting Defendant of aggravated battery, may have thought Defendant deserved to be convicted of at least one crime. Balancing the prejudicial impact of a photograph against its probative value is soundly within the trial court's discretion. *See State v. Mora*, 1997–NMSC–060, ¶ 57, 124 N.M. 346, 950 P.2d 789; *State v. Pettigrew*, 116

N.M. 135, 139, 860 P.2d 777, 781 (Ct.App. 1993). We note in passing that the use of potentially inflammatory material at trial is more properly discussed before opening statements in a motion *in limine* than after the material is waved at the jury. When we look at the trial court's decision, it is clear the photograph was relevant to the charge, the potential impact of a 3x5 picture from eight feet away was determined by the trial court to be slight, and we hold that the trial court did not abuse its discretion then, or in admitting the photograph as evidence later in the trial.

### Manslaughter Conviction

{23} Defendant contends that there was prosecutor misconduct when the prosecutor argued, during closing, that Defendant was a convicted felon, charged with a serious violent offense. Below, Defendant contended that the reference to serious violent offense was to his prior manslaughter conviction, which the trial court ruled could be the subject of cross-examination only if it was referred to as simply a felony. When Defendant raised his objection below, the prosecutor said that the serious violent felony referred to the aggravated battery charge. Defendant said that he would have to look at the transcript to see what interpretation was correct. There was no further mention of the issue. Under these circumstances, Defendant abandoned this issue. *See State v. Bojorquez*, 88 N.M. 154, 156, 538 P.2d 796, 798 (Ct.App.1975) (ruling that a defendant abandons an issue when defendant indicates that the issue will be raised later, but then never is).

### Vagueness of CDM Statute

{24} Defendant correctly points us to *State v. Favela*, 91 N.M. 476, 477–78, 576 P.2d 282, 283–84 (1978) (holding that a juvenile does not have to consume alcohol for the defendant to be found guilty of CDM), *overruled on other grounds by State v. Pitts*, 103 N.M. 778–79, 714 P.2d 582, 583 (1986). However, we are not persuaded by Defendant's argument that the CDM statute is vague because it does not specify that the juvenile whose delinquency is furthered must drink the alcohol. The facts in the case at bar show that Manuel drank the liquor. *Cuevas* clearly shows the purpose of the statute to be the protection of youth from the untoward influence of others to commit delinquent acts. *See Cuevas*, 94 N.M. at 794, 617 P.2d at 1309. In either instance, Defendant's conduct was unequivocally addressed by the statute.

### Ineffective Assistance of Counsel

{25} Defendant argues that he received ineffective assistance of counsel because his defense attorney tendered a more specific jury instruction than UJI 14–601. The jury instruction tendered by the defense in this case is quoted herein at ¶ 3. It is an adequate instruction under the use notes of UJI 14–601. The use of a particular jury instruction that comports with the law and use notes is a tactical decision on the part of trial counsel that this Court will not disturb. *See, e.g., State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992) ("[A] prima facie case [of ineffective assistance] is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel."). Based on the record in this case, it is apparent that trial counsel was active, informed, and energetic in pursuing Defendant's interests.

### Cumulative Error

{26} Finally, because there was "no error in the actions and decisions of the trial court, there is no cumulative error." *State v. Aragon*, 1999–NMCA–060, ¶ 19, 127 N.M. 393, 981 P.2d 1211.

### CONCLUSION

{27} For the reasons explained above, we hold that the CDM statute exists quite plainly, and untrammeled by the Liquor Control Act, as a distinct basis for Defendant's criminal liability. We affirm Defendant's conviction for CDM.

{28} **IT IS SO ORDERED.**

PICKARD, C.J., and BOSSON, J., concur.