This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                    **NO. A-1-CA-35265**

**CARLSON JONES,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1} Defendant Carlson Jones appeals from a jury verdict convicting him of one count of aggravated battery with a deadly weapon, in violation of NMSA 1978, Section 30-3-5(A), (C) (1969); one count of leaving the scene of an accident with no great bodily harm or death, in violation of NMSA 1978, Section 66-7-202 (1978); one count of criminal damage to property over $1000, in violation of NMSA 1978, Section 30-15-1 (1963); one count of criminal damage to property less than $1000, in violation of Section 30-15-1; and one count of reckless driving, in violation of NMSA 1978, Section 66-8-113 (1987). Defendant argues: (1) trial counsel was ineffective in failing to argue and request that the jury be instructed on self-defense and duress as affirmative defenses to aggravated battery; and (2) the State's evidence was insufficient to support convicting Defendant on any of the counts charged. For the reasons that follow, we affirm Defendant's convictions. Because this is a memorandum opinion and the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

{2} Defendant's convictions stem from an incident in which a group of bail bondsmen attempted to arrest him for failing to appear in court. New Mexico Bonding posted a bond for Defendant in association with a charge against him for driving with

a revoked license. Defendant failed to show up for court appearances. As of March 2015, New Mexico Bonding had been attempting to locate Defendant for approximately six months, without success.

{3}     Aaron Alberti (Victim), a bail bondsman for New Mexico Bonding, eventually received a tip about Defendant's whereabouts and that his vehicle was parked in the carport of an apartment complex in Albuquerque. Based on this tip, Victim, four other bail bondsmen (Richard Montoya, Gabriel Diaz, Joe Nash, and Felipe Tapia), and Joe Nash's fiancee, Crystal Baca went to the apartment complex to arrest Defendant, but when they arrived, Defendant's vehicle was gone. While they waited for Defendant to return, Victim and the other bail bondsmen discussed the layout of the apartment complex and how best to position themselves and their cars so that when Defendant returned, he would not be able to get away. All of the bail bondsmen had a badge or logo on their vest identifying themselves as such. They were also carrying equipment, including firearms, tasers, mace, handcuffs, and flashlights.

{4}     Defendant returned to the apartment complex a couple of hours later, around midnight, and backed his vehicle into a parking space in the carport. The bail bondsmen approached Defendant's vehicle. Victim was positioned in front of Defendant's vehicle near one of the headlights and the other bondsmen were positioned on the sides of the vehicle. The bondsmen identified themselves, yelled at

Defendant to get out of the car, and banged on the Defendant's driver's side window. In response, Defendant, who had met Victim before, looked directly at Victim with a "blank stare" and did not say anything. There was testimony that the

carport had sufficient lighting to allow Defendant to see who the bondsmen were.

{5}    Defendant's vehicle started "going back and forth like he was putting it in gear," and then "took off at a real high rate of speed out of that spot[,]" turning toward the exit of the carport, which put Victim right "in the center of the car['s]" trajectory. This acceleration caused Victim to be struck by the vehicle and to fall onto the hood. After Defendant had already started to leave, Richard Montoya broke the Defendant's driver's side window "to neutralize" Defendant from running anyone over and so that Defendant would not smash Victim into a nearby wall. After rolling off the hood after the first hit, Victim was struck by Defendant's vehicle again. Victim drew his firearm and fired seven or eight shots at Defendant's vehicle as he was being pushed back by Defendant's vehicle during the second hit. As a result of these hits, Victim suffered sore knees, a sore back, and a headache. There was testimony that Defendant could have exited the parking space without hitting Victim if he had been driving slower.

{6}    The carport was located in a narrow alleyway with one entrance and exit. Victim and Joe Nash (who was driving Crystal Baca's vehicle) had parked their cars

4

between where Defendant was parked and the exit of the carport. As Defendant exited the alley, he collided "head-on" with Crystal Baca's vehicle. Defendant then "backed it up and ran over the driver's side portion of the car[.]" Crystal Baca was in the vehicle during this collision. Joe Nash testified that there was about $9000 in damage to Crystal Baca's car. Defendant also hit Victim's vehicle, causing minor damage. After a short chase, the bondsmen chose not to continue pursuing Defendant. There was testimony that Defendant could have exited the carport without hitting Crystal Baca and Victim's vehicles.

**DISCUSSION**

**I.        Ineffective Assistance of Counsel**

{7}        Defendant argues that his trial counsel was ineffective in failing to request that the jury be instructed on the affirmative defenses of self-defense and duress to the charge of aggravated battery. We disagree.

{8}        "We review de novo the legal issues involved with claims of ineffective assistance of counsel and defer to the findings of fact of the district court if substantial evidence supports the court's findings." *State v. Lopez*, 2018-NMCA-002, ¶ 17, 410 P.3d 226 (alteration, internal quotation marks, and citation omitted). "A prima facie case of ineffective assistance of counsel is made where: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible,

rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *Id.* ¶ 18 (internal quotation marks and citation omitted).

**{9}** "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "we do not second guess defense counsel's strategic decisions when applying the deficient performance prong." *State v. Morgan*, 2016-NMCA-089, ¶ 14, 382 P.3d 981 (alteration, internal quotation marks, and citation omitted); *see State v. Baca*, 1993-NMCA-051, ¶ 34, 115 N.M. 536, 854 P.2d 363 ("Counsel's choice of defenses will not be disturbed unless the choice appears wholly unreasoned or deprives the defendant of his only defense."). "The use of a particular jury instruction that comports with the law and use notes is a tactical decision on the part of trial counsel that this Court will not disturb." *State v. Perea*, 2001-NMCA-002, ¶ 25, 130 N.M. 46, 16 P.3d 1105, *aff'd in part, vacated in part*, 2001-NMSC-026, ¶ 6, 130 N.M. 732, 31 P.3d 1006.

**{10}** We begin by placing Defendant's claim in context. Defendant's theory of the case was that his actions hitting Victim with his vehicle were reactions to the "[c]haos, confusion, and gunshots" he encountered when Victim and the other bondsmen attempted to arrest him. In opening statement, defense counsel explained to the jury that:

> This night was chaotic and it was confusing. Even to the people experiencing it, especially to [Defendant], who had no idea the stakeout

6

was taking place in the first place. . . . [N]o one can testify that [Defendant] intended to hit [Victim] with his vehicle; that he intended to injure him[.] . . . No one can testify that he was not just reacting to the chaos and the confusion caused by the bail bondsmen.

At the close of the State's evidence, Defendant moved for a directed verdict on the State's count of aggravated battery, which the district court denied, arguing that the State failed to establish that Defendant intended to injure Victim when he struck him with his vehicle. And during closing argument, defense counsel argued that:

All we know about [Defendant's] intent is that he wanted to get out of there, that he was surrounded, being yelled at, his windows were breaking. It's a chaotic situation. And his instinct was to flee, and that's what he did.

And we know from [Richard] Montoya that [Defendant] couldn't have fled without tapping [Victim] with his car because of where he was positioned, that there was no way out. But simply hitting [Victim] with his car is not enough. That's not an aggravated battery. [Defendant] needed to do that with the intent to injure [Victim]. But what we have here is somebody trying to get away.

. . . .

People react to situations. Accidents happen. But not all accidents are criminal.

{11} Under these facts, we conclude that defense counsel's choice to not request jury instructions on the affirmative defenses of self-defense and duress was part of a plausible, rational trial strategy. Defense counsel's strategy for defending the aggravated battery count was that Defendant lacked the requisite intent to injure

Victim when he struck him with his vehicle, arguing that Defendant's acts of hitting Victim were merely reactions to the "[c]haos, confusion, and gunshots" that he faced when the bail agents attempted to arrest him. This strategy was not wholly unreasonable in light of the fact that Defendant did not testify and the State was forced to rely heavily upon circumstantial evidence to prove Defendant's intent to injure Victim.

{12} Additionally, even if the evidence at trial was sufficient to warrant giving the instructions on self-defense and duress, pursuing these defenses would have been inconsistent with defense counsel's theory that Defendant lacked intent to injure Victim. In pursuing self-defense or duress defenses, Defendant would have effectively conceded that he intended to hurt Victim when he hit Victim with his vehicle—either on grounds of "necessary defense of self against any unlawful action; reasonable grounds to believe a design exists to commit a felony; or reasonable grounds to believe a design exists to do some great bodily harm[,]" UJI 14-5183 NMRA, Use Note 1; or because "defendant was forced" to injure Victim "under threats or out of necessity." UJI 14-5130 NMRA (alterations omitted).

{13} We conclude that Defendant failed to establish a claim of ineffective assistance of counsel. *See Baca*, 1993-NMCA-051, ¶¶ 2-5, 36 (holding that defense counsel was not ineffective in failing to request a duress jury instruction in aggravated battery case

8

in part because it would have been inconsistent with the defendants' theory of the case that no conspiracy to stab the victim had occurred and that they acted in self-defense to an incident initiated by the victim); *State v. Gonzales*, 2007-NMSC-059, ¶¶ 2-4, 15, 143 N.M. 25, 172 P.3d 162 (holding that defense counsel was not ineffective in failing to request an imperfect self-defense jury instruction in homicide case; defense counsel's choice was reasonable trial strategy where the defendant's theory of the case was to maintain his factual innocence).

**II.      Sufficiency of the Evidence**

{14}      Defendant also claims that the State's evidence was insufficient to support his convictions "because it failed to prove beyond a reasonable doubt that [Defendant] acted with the requisite intent under the circumstances."

{15}      In reviewing a defendant's challenge to the sufficiency of evidence, we view "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Carrillo*, 2017-NMSC-023, ¶ 42, 399 P.3d 367 (internal quotation marks and citation omitted). The central consideration in a sufficiency of the evidence review is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Suazo*, 2017-NMSC-011, ¶ 32, 390 P.3d 674 (internal quotation

marks and citation omitted). In jury trials, "the jury instructions are the law of the case against which the sufficiency of the evidence supporting the jury's verdict is to be measured." *State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885, *cert. denied*, ___-NMCERT-___, (No. S-1-SC-35993, Aug. 8, 2016).

**A.     Aggravated Battery With a Deadly Weapon**

{16}     The jury was instructed, according to UJI 14-322 NMRA, that in order to find Defendant guilty of aggravated battery with a deadly weapon that the State was required to prove beyond a reasonable doubt each of the following elements:

1.     . . . Defendant, touched or applied force to [Victim] by hitting him with a vehicle. [Defendant] used a vehicle. A vehicle is a deadly weapon only if you find that a vehicle when used as a weapon, could cause death or great bodily harm;

2.      . . . Defendant, intended to injure [Victim];

3.      [Defendant's] act was unlawful;

4.     This happened in New Mexico on or about the 3rd day of March, 2015.

"Intent to injure need not be established by direct evidence but may be inferred from conduct and the surrounding circumstances." *State v. Valles*, 1972-NMCA-076, ¶ 4, 84 N.M. 1, 498 P.2d 693.

{17}     In their attempt to arrest Defendant, the bondsmen identified themselves, yelled at Defendant to get out of the car, and banged on the Defendant's driver's side

window. The lighting was sufficient to allow Defendant to see who the bondsmen were. In response, Defendant, who had met Victim before, looked directly at Victim with a "blank stare" and did not say anything. Defendant nevertheless proceeded to accelerate out of the parking space, and hit Victim with his vehicle twice, despite evidence that he could have left the parking space and carport without hitting Victim had he been driving slower. Based on the evidence presented at trial, we conclude, in addition to proving the other elements of aggravated battery with a deadly weapon, that the State presented sufficient evidence to establish that Defendant acted with intent to injure Victim when he hit him with his vehicle.

**B.    Leaving the Scene of an Accident**

{18}    The jury was instructed, consistent with Section 66-7-202, that in order to find Defendant guilty of leaving the scene of an accident with no great bodily harm or death, the State was required to prove beyond a reasonable doubt each of the following elements:

1.    . . . Defendant, operated a motor vehicle;

2.    . . . Defendant, was involved in an accident which resulted in injury but not great bodily harm to [Victim];

3.    . . . Defendant, failed to stop and give his name, address, and registration number of the vehicle he was driving.

4.    This happened in New Mexico on or about the 3rd day of March, 2015.

11

In addition to the other elements of leaving the scene of an accident, the State was also required to prove beyond a reasonable doubt that Defendant "acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime. Whether . . . Defendant, acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct."

**{19}** Defendant was undisputably involved in an accident resulting in injury to Victim when he hit him twice with his vehicle. Defendant did not stop after hitting Victim and he did not give his name, address, and registration number of the vehicle he was driving to Victim or to any of the other bail agents present at the scene. Rather, Defendant ran from the scene of the accident. Based on the evidence presented at trial, we conclude, in addition to proving the other elements of leaving the scene of an accident, that the State presented sufficient evidence to establish that Defendant acted intentionally when he failed to stop and give his name, address, and the registration of the vehicle he was driving after he was involved in an accident that resulted in injury to Victim.

**C.      Criminal Damage to Property**

**{20}** The jury was instructed, according to UJI 14-1501 NMRA, that in order to find

12

Defendant guilty of criminal damage to property in excess of $1000, the State was required to prove beyond a reasonable doubt each of the following elements:

1. [D]efendant intentionally damaged property of Crystal Baca;

2. [D]efendant did not have the owner's permission to damage the property;

3. The amount of the damage to the property was more than $1000[];

4. This happened in New Mexico on or about the 3rd day of March, 2015.

The jury was also instructed, according to UJI 14-1501, that in order to find Defendant guilty of criminal damage to property less than $1000, the State was required to prove beyond a reasonable doubt each of the following elements:

1. [D]efendant intentionally damaged property of [Victim];

2. [D]efendant did not have the owner's permission to damage the property;

3. This happened in New Mexico on or about the 3rd day of March, 2015.

In addition to the other elements of criminal damage to property, the State was also required to prove beyond a reasonable doubt that Defendant "acted intentionally when he committed the crime[s]. A person acts intentionally when he purposely does an act which the law declares to be a crime. Whether . . . Defendant acted intentionally may

13

be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct."

{21} As Defendant exited the carport, he collided "head-on" with Crystal Baca's vehicle. Defendant then "backed it up and ran over the driver's side portion of the car[.]" Joe Nash testified that there was about $9000 in damage to Crystal Baca's car. Defendant also hit Victim's vehicle, causing minor damage. Defendant then exited the carport and left the scene. There was testimony that Defendant could have exited the carport without hitting Crystal Baca and Victim's vehicles. Based on the evidence presented at trial, in addition to proving the other elements of the two counts of criminal damage to property, we conclude that the State presented sufficient evidence to establish that Defendant acted intentionally when he damaged the property of Crystal Baca and Victim without their permission.

**D. Reckless Driving**

{22} The jury was instructed, according to UJI 14-4504 NMRA, that in order to find Defendant guilty of reckless driving, the State was required to prove beyond a reasonable doubt each of the following elements:

1. . . . Defendant, operated a motor vehicle;

2. . . . Defendant, drove carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property;

14

3.    This happened in New Mexico on or about the 3rd day of March, 2015.

{23}    Under the facts already described, and in addition to proving the other elements of reckless driving, we conclude that the State presented sufficient evidence to establish that Defendant drove recklessly. Defendant, in operating his vehicle, hit Victim with his vehicle twice, crashed into both Victim's and Crystal Baca's vehicles, and sped away from the scene of the accident. Defendant committed these acts despite evidence that he could have left the carport without hitting Victim or crashing into Victim and Crystal Baca's vehicles.

**CONCLUSION**

{24}    The judgment and sentence is affirmed.

{25}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

15

_____

**STEPHEN G. FRENCH, Judge**