4 P.3d 1231

2000-NMSC-020

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Concepcion GUILEZ, Jr., Defendant–Respondent.**

No. 25,920.

Supreme Court of New Mexico.

June 15, 2000.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Petitioner.

Michener Law Firm, L.L.C., Roger E. Michener, Placitas, for Respondent.

Jones, Snead, Wertheim, Wentworth & Jaramillo, P.A., Lisa N. Cassidy, Jerry Todd Wertheim, Santa Fe, Barbara Bergman, Albuquerque, for Amicus Curiae New Mexico Criminal Defense Lawyers Association.

## OPINION

MINZNER, Chief Justice.

{1} Defendant Concepcion Guilez was charged with and convicted of abandonment or abuse of a child, *see* NMSA 1978, § 30–6–1(C)(1) (1989), and reckless driving, *see* NMSA 1978, § 66–8–113(A) (1987). Defendant was also charged with operating a motor vehicle while under the influence of intoxicating liquor or drug, *see* NMSA 1978, § 66–8–102 (1993), to which he pled guilty. The State now appeals from an opinion of the New Mexico Court of Appeals, *State v. Guilez,* 1999–NMCA–127, 128 N.M. 93, 990 P.2d 206, in which the Court reversed the judgment and sentence entered by the district court on the jury's verdicts, and remanded with an order to vacate Defendant's conviction for child abuse and enter an amended judgment and sentence. The Court of Appeals held that under the general/specific statute rule the reckless driving statute was the more specific offense and preempted the child abuse statute when the conduct underlying both convictions was unitary. *See Guilez,* 1999–NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206. On appeal, the State contends the Court of Appeals misapplied the general/specific statute rule. We hold the general/specific statute rule is not applicable on the facts of this case. We therefore reverse the Court of Appeals and affirm the judgment and sentence entered by the district court.

## I.

{2} At approximately 10:00 p.m. on April 19, 1997, Officer Richard D. Newman was patrolling a highly traveled portion of Highway 70 when he heard a vehicle on the opposite side of the highway heading towards Tularosa. As the vehicle drew closer, he observed it was a truck, traveling in the inside lane, without operating headlights or taillights. It appeared to be traveling at the posted speed limit or faster; Newman esti-

mated, based on his experience, that the truck was traveling between sixty-five and seventy miles per hour. Newman immediately crossed the median in pursuit of the truck; it took him a few seconds to turn around so that he was driving in the same direction as the truck was traveling. In attempting to catch up with the truck, Newman testified he drove between eighty and ninety miles per hour. Newman saw the truck brake slightly in order to turn onto Old Mescalero Road. Shortly thereafter, just when Newman was beginning to catch up with the truck, the driver made a right turn and collided with a fence. Newman turned on his spotlight and ordered Defendant, who was driving, to exit the truck. Newman noticed Defendant was wet, smelled of alcohol, and had bloodshot eyes.

{3} Defendant told Newman he knew the lights did not work, but that he had been swimming when it got dark so he had decided to try to make it home without lights. He further admitted to drinking one beer. Newman administered three field sobriety tests; Defendant failed each one. Defendant had slurred speech and balance problems. Newman placed Defendant under arrest. Newman then approached the truck, at which point he noticed that of the two children in the cab, a three-year-old boy and a six-year-old girl, only the girl was wearing a seat belt.

{4} Defendant and his girlfriend, Hope Chavez, gave the following account. Defendant had been having problems with the headlights but had fixed them earlier that day. Defendant, Hope, and her two children attended a picnic on the river. Hope drank one beer and Defendant drank between two and three beers. The group left the picnic sometime between 9:00 and 9:30 p.m. The children were damp from swimming. Defendant acknowledged that the three-year-old boy was not in a child safety seat, which Defendant knew was required by law. He testified, however, that he had buckled both children into one seatbelt on the passenger side of the cab.

{5} At some point on the way home, the truck hit a large bump in the road and the headlights stopped working. The taillights and sidelights continued to work. Defendant pulled over and tried to fix the headlights but was not successful. The group was about a mile and a half from the river where some of their friends still remained. Instead of waiting for help, Defendant and Hope decided to keep driving because they did not want the children to catch cold. Defendant proceeded to drive thirty-five to forty miles per hour on the shoulder. After turning onto Old Mescalero Road, it was so dark that Defendant had to stick his head out the window in order to navigate. Defendant thought he was turning onto the road in which Hope lived but instead turned onto another road hitting a private fence at a speed of five to ten miles per hour. According to Hope, the three-year-old boy wriggled out of the seatbelt by which he and his sister had been secured while they waited in the truck and Newman talked to Defendant.

{6} Defendant was charged in an amended criminal information with child abuse, driving while intoxicated, and reckless driving. Before trial, Defendant filed a motion to dismiss the child abuse count arguing that the reckless driving statute was a more specific statute than the child abuse statute and, therefore, under New Mexico's general/specific statute rule the prosecutor could only try him under the reckless driving statute. After a hearing, the district court, referring to *State v. Arellano*, 1997–NMCA–074, 123 N.M. 589, 943 P.2d 1042, held that neither statute was more specific because each statute contained an element, which could be construed as being more specific, that was not contained in the other. After a jury trial, Defendant was found guilty of child abuse and reckless driving.

## II.

{7} This Court recently clarified the applicability of the general/specific statute rule in *State v. Cleve*, 1999–NMSC–017, ¶¶ 17–36, 127 N.M. 240, 980 P.2d 23. Both the State and Defendant agree that *Cleve* is the proper starting point. We therefore begin our analysis by reviewing *Cleve*. Two distinct rationales underlie the general/specific statute rule. *See id.* ¶ 17. The first depends on a determination that one statute preempts another. *Cleve* stated the "special law [is] an exception to the general law because the Legislature is presumed not to

have intended a conflict between two of its statutes and because the Legislature's attention is more particularly directed to the relevant subject matter in deliberating upon the special law." *Id.* The second or corollary rationale applies in criminal cases and is an offshoot of the constitutional prohibition against double jeopardy. *See id.* ¶¶ 17, 22–25. If two statutes, one general and one specific, punish the same conduct, and are found to constitute a double jeopardy violation, the general/specific statute rule limits prosecutorial discretion "to the extent that it requires prosecution under one statute instead of another." *Id.* ¶ 22. Therefore in this type of analysis, the "determination that the Legislature did not intend multiple punishment . . . [is] a prerequisite to our inquiry under the general/specific statute rule." *Id.*

{8} Under *Cleve,* then, there are two distinct approaches in determining whether the general/specific statute rule applies. One focuses directly on the legislature's intent. The other arises from express or implied statutory limits on the power of the prosecutor. Both require the application of statutory construction principles. We will call the former a preemption analysis. We will call the latter a quasi-double-jeopardy analysis.

▆▆▆ {9} *Cleve* began with a quasi-double-jeopardy analysis, which it described as follows:

Courts should compare the elements of the two relevant crimes. If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary. If the elements differ, courts must look to other indicia of legislative intent and determine whether the Legislature intended to limit prosecutorial discretion in the selection of charges for the specific criminal conduct. In ascertaining legislative intent, courts should balance the rule of lenity, which favors applying the general/specific statute rule in cases of ambiguity, with the judiciary's longstanding deference to prosecutorial discretion, which favors the exercise of caution before applying the general/specific statute rule.

*Id.* ¶ 26 (internal citations omitted). The statutes' language, histories, and stated or implied legislative purposes are also useful factors when ascertaining legislative intent. *See id.* ¶ 27.

{10} The two statutes at issue in *Cleve* were a prohibition against cruelty to animals and an unlawful hunting statute. The Court compared the elements of the statutes, determined they were different, and concluded there was a presumption under the double jeopardy analysis that the legislature intended to separately punish the offenses. *See id.* ¶ 30. The opinion then looked to other indicia of legislative intent. *See id.* ¶ 31. First, the opinion addressed whether the violation of one statute would normally result in violation of another. *See id.* The answer was no, because unlawful hunting would not necessarily meet the elements of cruelty to animals if, for example, a person was hunting out of season. *See id.* The Court then looked at the purposes served by the statutes and determined they were also different. *See id.* The Court concluded there was no double jeopardy violation and therefore did not further address the application of the general/specific statute rule as it relates to multiple punishment. *See id.*

{11} *Cleve* then considered whether one statute preempted the other. *See id.* ¶¶ 32–36. In *Cleve,* the defendant argued "the overall statutory scheme governing hunting and fishing demonstrate[d] a legislative intent to preempt the application of [the cruelty to animals statute] . . . with respect to conduct contemplated by game and fish laws." *Id.* ¶ 32. This Court agreed. We held that despite the lack of conflict between the two particular statutes at issue, the two statutory schemes, as a whole, irreconcilably conflicted. *See id.* This conclusion was supported by a few examples, one being that snaring deer falls within the hunting activity contemplated by the game and fish statutes, yet it supported Defendant's convictions under the cruelty to animals statute. *See id.* ¶ 34. The Court stated, "[W]e believe the comprehensive nature of the game and fish laws with respect to hunting activity demonstrates a legislative intent to preempt application of [the cruelty to animals statute] to the hunting of game animals." *Id.* ¶ 36.

## III.

{12} As in *Cleve*, we begin by applying the double jeopardy analysis, and thus our first task is to determine whether there is unitary conduct. *See Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). To do this, we "determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable." *Id.* at 14, 810 P.2d at 1234. In this case, the conduct is distinguishable.

{13} The conduct supporting child abuse began when Defendant placed the younger child in the truck without a child restraint device and was completed, although continuing, when Defendant initially began to drive after having consumed alcohol. On the other hand, the conduct supporting reckless driving did not begin until Defendant began driving carelessly and heedlessly. Reckless driving was established at least by the time the lights ceased to work and Defendant continued to drive on the highway. The act required to commit child abuse was completed, although continuing, before the act of reckless driving began. Under our cases this conduct is not unitary. *See State v. Foster*, 1999-NMSC-007, ¶ 34, 126 N.M. 646, 974 P.2d 140 (holding conduct not unitary when act required to complete crime of aggravated kidnapping was complete, though continuing, before the act required to complete crime of murder began).

{14} In *Swafford*, we stated that "similar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." 112 N.M. at 14, 810 P.2d at 1234. In this case, the conduct supporting child abuse and reckless driving was not unitary, but rather was composed of a number of separate acts that in part overlapped. As approved in *Swafford*, "the jury reasonably could have inferred independent factual bases" for separate statutory offenses. *Id.* When the conduct is not unitary, we cease the double jeopardy inquiry. *See id.* at 14, 810 P.2d at 1234. Because we hold there is no double jeopardy violation, there is no need to apply the general/specific statute rule as it applies to multiple punish-ment. *See Cleve*, 1999-NMSC-017, ¶ 31, 127 N.M. 240, 980 P.2d 23.

{15} When applying the preemption analysis, the question is "whether the Legislature intended to create an exception to a general statute by enacting another law dealing with the matter in a more specific way." *Cleve*, 1999-NMSC-017, ¶ 32, 127 N.M. 240, 980 P.2d 23. A preemption analysis is utilized when there is a conflict between either two statutes or, as in *Cleve*, two statutory acts. In *Cleve* the conflict was clear because the hunting and gaming act legalized conduct which also satisfied the elements of the cruelty to animals statutes. *See id.* ¶ 34. This kind of direct conflict, however, is not required. In *State v. Blevins*, the Court stated that "[i]t is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute." 40 N.M. 367, 368, 60 P.2d 208, 209 (1936) (quoted authority omitted). Therefore, for the purpose of the general/specific statute rule, the presence of two laws that prohibit "the same matter" is considered a conflict. When the conflict is not irreconcilable, however, the analysis is one of legislative intent; we consider the same type of factors that are considered in the double jeopardy analysis. The emphasis is not on whether the legislature intended to limit prosecutorial discretion, but rather whether the legislature intended to repeal the child abuse statute, as it applies to children in vehicles, when it enacted the Motor Vehicle Code, generally, and the reckless driving statute, specifically.

{16} First, we look to the plain language of two statutes to determine whether it indicates a legislative intent to preempt one statute with another. *See Cleve*, 1999-NMSC-017, ¶¶ 8, 16, 32, 127 N.M. 240, 980 P.2d 23. In this case, the language of the statutes is quite similar. The relevant provision of the child abuse statute addresses persons who "knowingly, intentionally or negligently, and without justifiable cause," cause or permit "a child to be ... placed in a situation that may endanger the child's life or heath." § 30-6-1(C). The reckless driving

statute governs driving "any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property." § 66–8–113(A). Looking at the language alone, one could reasonably conclude that reckless driving was designed to be "regarded as an exception to" child abuse. *Blevins,* 40 N.M. at 368, 60 P.2d at 209 (quoted authority omitted). This conclusion, however, does not end the inquiry.

{17} The purposes behind the statutes do not reflect an intent to preempt; the legislative goals of these two statutes are clearly different. The child abuse statute was designed to give greater protection to children than adults. The statute recognizes that adults owe a greater responsibility to minors, who are more vulnerable than adults. The child abuse statute provides, in general, for greater penalties when a child is the victim; for instance, child abuse resulting in great bodily harm is a first degree felony, *see* § 30–6–1(C), whereas aggravated battery resulting in great bodily harm is a third degree felony, *see* NMSA 1978, § 30–3–5(C) (1969). The penalties imposed by the child abuse statute recognize that children are under the care and responsibility of adults. When an adult, without justification, endangers a child's safety, the adult is more culpable than when the safety of another adult is jeopardized. On the other hand, the reckless driving statute punishes conduct that might harm either a member of the general public or any property.

{18} A review of the history of these two statutes further supports a finding that there was no intent to preempt. In 1973, the legislature adopted the child abuse statute, § 30–6–1(C)(1), and specified that abuse not resulting in great bodily harm or death was a fourth degree felony; abuse that did inflict great bodily harm or death was a second degree felony. *See* 1973 N.M.Laws, ch. 360, § 10. In 1984, the legislature increased the penalty for all subsequent offenses under the statute. *See* 1984 N.M.Laws, ch. 92, § 5. In 1989, the legislature again increased the penalties, this time making a first offense of child abuse, not inflicting great bodily harm or death, a third degree felony; abuse result-

ing in great bodily harm or death became a first degree felony. *See* 1989 N.M.Laws, ch. 351, § 1. In 1978, the legislature enacted the reckless driving statute, § 66–8–113(A). The penalty for a first offense is five to ninety days in jail and/or a fine between twenty-five and one hundred dollars. *See* 1978 N.M.Laws, ch. 35, § 521. The statute was amended in 1987, but the penalty remained unchanged. *See* 1987 N.M.Laws, ch. 97, § 4. The history of the child abuse statute compared with the history of the reckless driving statute compels the conclusion that the legislature has expanded protection for children. The legislature has steadily increased the penalty for conduct harmful to children, while leaving alone the reckless driving statute's penalties and providing no extra protection for children under this statute. We believe this history clearly shows the legislature's intent to protect children from abuse.

{19} The State has argued on appeal that, because neither the reckless driving statute nor the child abuse statute cover the entire course of Defendant's conduct, the general/specific statute rule cannot apply. In other words, the State argues that, because reckless driving does not include Defendant's failure to secure his son in a car seat and because child abuse does not include the damage inflicted upon the fence, the general/specific statute rule is inapplicable. The State's argument misapprehends our holding in *Cleve.* In a preemption analysis, the issue is not only whether the reckless driving statute preempts the child abuse statute, but also whether the Motor Vehicle Code as a whole preempts the child abuse statute.

{20} In this case, in fact, it could be argued that the State should have prosecuted Defendant for driving while intoxicated, reckless driving, and violation of the child restraint statute, *see* NMSA 1978, § 66–7–369(A)(2) (1991) (requiring that children between the age of one and five be secured in either a child passenger restraint device or by a seatbelt in the rear seat). Under the facts of this case, this result would be inappropriate, because the Motor Vehicle Code as a whole does not appear to preempt the child abuse statute. The Code does not generally

provide extra protection for children. The child restraint statute is the only portion of the Code that contemplates protecting children, see NMSA 1978, § 66–7–368 (1983) (stating that the purpose behind the child restraint statutes "is to minimize the likelihood of injury or death to young children riding in certain vehicles"). The child restraint statute, however, is a strict liability crime, see NMSA 1978, § 66–7–369(A)(2), assessing a penalty of twenty-five dollars, see NMSA 1978, § 66–8–116(A) (1995). Although the stated purpose of the child restraint statute is to minimize the likelihood of harm to children, it is unlikely the legislature intended that statute to be the sole mechanism to punish child abuse that involves a motor vehicle. When a number of offenses, in the aggregate, endanger the life or health of a child, Section 66–7–369(A)(2) is an unlikely deterrent.

{21} The Court of Appeals held and Defendant contends on appeal that where two statutes proscribe the same conduct and one statute can be found in the Motor Vehicle Code the enactment of the Motor Vehicle Code indicates a legislative intent to preempt. See Guilez, 1999–NMCA–127, ¶¶ 12, 19–20, 128 N.M. 93, 990 P.2d 206. The Court of Appeals concluded that "the Legislature intended that the reckless driving statute ... be the applicable statute governing child abuse not resulting in great bodily harm or death, where the alleged offense involves the operation of a motor vehicle." Id. ¶ 12. The State argues the Court of Appeals misapplied Cleve as well as other existing case law. We agree with the State that to the extent the Court of Appeals, in applying Cleve, in large part rested its decision on the notion that the legislature's enactment of a comprehensive motor vehicle code indicates an intent to preempt the field, see Guilez, 1999–NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206, the Court of Appeals misapprehended our holding in Cleve.

{22} We recognize that Cleve quoted State v. Yarborough, 1996–NMSC–068, ¶ 27, 122 N.M. 596, 930 P.2d 131, for the proposition that the enactment of a comprehensive motor vehicle code indicates "a legislative intent to preempt the field." Cleve, 1999–NMSC–017, ¶¶ 27, 36, 127 N.M. 240, 980 P.2d 23. Yarborough noted, however, only that "[o]ther jurisdictions have held that the enactment of a comprehensive motor vehicle code shows a legislative intent to preempt the field." 1996–NMSC–068, ¶ 27, 122 N.M. 596, 930 P.2d 131 (emphasis added). The common thread of the holdings cited in Yarborough was not that a motor vehicle code generally preempts a criminal code, but rather that a specific motor vehicle code statute may preempt another criminal statute. See State v. Davidson, 78 Idaho 553, 309 P.2d 211, 215–16 (1957); Blackwell v. State, 34 Md.App. 547, 369 A.2d 153, 158–59 (1977); State v. Wilcox, 216 Or. 110, 337 P.2d 797, 803 (1959); State v. Collins, 55 Wash.2d 469, 348 P.2d 214, 215 (1960).

{23} In fact, Yarborough held "that the legislature intended to preempt the crime of involuntary manslaughter with the specific crime of homicide by vehicle when the predicate offence is a violation of the Motor Vehicle Code." 1996–NMSC–068, ¶ 30, 122 N.M. 596, 930 P.2d 131. This conclusion directly followed a discussion in which the Court determined that to hold otherwise was to conclude that the legislature, by enacting the vehicular homicide statute, enacted a useless statute. See id. ¶ 29. The reason this Court determined the vehicular homicide statute would be otherwise useless was because the two statutes punished exactly the same conduct and the vehicular manslaughter statute had a higher mens rea; the Court could not imagine any circumstances under which the State would choose to prosecute under the later-enacted vehicular homicide statute when it could achieve the same punishment under the involuntary manslaughter statute. See id. This specific concern has no application in the present case because there are obvious instances in which reckless driving would not be child abuse.

{24} The holding of the Court of Appeals contravenes the intent of the child abuse statute by decreasing the protection for children when the abuse suffered is a result of driving offenses. We therefore conclude that the child abuse statute is neither preempted by the reckless driving statute, specifically, nor by the Motor Vehicle Code, generally. This holding does not overrule Yarborough and should not be construed to mean there

will not be instances where the Motor Vehicle Code will preempt offenses found in our Criminal Code. The Motor Vehicle Code is a comprehensive code which often overlaps with the Criminal Code both in the conduct it prohibits and the purposes it serves to promote; *Yarborough* exemplifies such a circumstance. In *Yarborough*, not only did the statutes prohibit the same conduct, but the purpose of the vehicular homicide statute and the involuntary manslaughter statutes was essentially the same. Both statutes were designed to protect people from reckless acts resulting in death. The relevant provision of the involuntary manslaughter statute achieved that goal by providing a general prohibition against unintentional killings by unlawful acts, *see* NMSA 1978, § 30–2–3(B) (1994), whereas the homicide by vehicle statute achieved that same goal by providing a specific prohibition against unintentional killings by the unlawful operation of a motor vehicle, *see* NMSA 1978, § 66–8–101 (1991). A comparison of the child abuse and reckless driving statutes simply does not support an analogous result. While the comprehensive nature of the Motor Vehicle Code is relevant to a finding of whether the general/specific statute rule applies, for preemption to occur, there must be a strong indication of legislative intent, which should be determined on a case-by-case basis. In the present case we lack a strong indication of legislative intent.

## IV.

{25} We conclude that under the facts of this case, the general/specific statute rule is inapplicable. We therefore reverse the Court of Appeals and affirm the judgment and sentence of the district court.

{26} **IT IS SO ORDERED.**

BACA, SERNA, and MAES, JJ., concur.

FRANCHINI, J., dissenting.

FRANCHINI, Justice, (Dissenting)

{27} This is a case of statutory interpretation and the statute should be interpreted by the Court as the legislature understood it at the time it was passed. *Doe v. State ex rel. Governor's Organized Crime Prevention Commission,* 114 N.M. 78, 80, 835 P.2d 76, 78 (1992).

{28} In 1973, the legislature passed the predecessor statute to Section 30–6–1 defining child abuse and neglect. This version is identical to the current statute and differs only in the penalty provision which was increased in 1989. In 1978, five years after the child abuse statute, the legislature enacted the current reckless driving statute. From the plain meaning of the language, the conduct addressed by the two statutes is strikingly similar. The child abuse statute, as applied to *Guilez,* addressed conduct of "knowingly, intentionally, or negligently, and without justifiable cause, *causing or permitting a child to be ... placed in a situation that may endanger the child's life or health."* *See* § 30–6–1(C)(1) (emphasis added). The reckless driving statute referred to the driving of any vehicle "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution ... and at a speed or in a manner so as *to endanger or be likely to endanger any person* or property." *See* § 66–8–113(A) (emphasis added).

{29} Thus, both statutes refer to conduct endangering a person. Further, the Legislature did not choose to exclude children from the definition of persons in the reckless driving statute. That would have clarified the two. Since this was not done, the resulting overlap alone makes the Legislature's intent ambiguous. The general/specific rule of statutory interpretation applies when the statutory intent is ambiguous. *See State v. Trujillo,* 1999–NMCA–003, ¶ 15, 126 N.M. 603, 973 P.2d 855.

{30} As a general principle of statutory interpretation, a comprehensive statutory scheme passed subsequent to a statute that addresses the same area will supersede the prior statute. *Cf. State v. Arellano,* 1997–NMCA–074, ¶ 6, 123 N.M. 589, 943 P.2d 1042. That is the case here. The legislature passed the child abuse statute in 1973. In 1978, the Legislature passed the Motor Vehicle Code, including the reckless driving statute that addressed the same "endangering" conduct. From the corresponding language of the two statutes it is reasonable to infer the Legislature's intent to have the reckless driving statute preempt the child abuse statute when the "abuse" in question is based solely on driving a vehicle.

{31} This Court has held that the legislature has preempted the field in two instances, *Cleve,* 1999–NMSC–017, ¶ 36, 127 N.M. 240, 980 P.2d 23, and *Yarborough,* 1996–NMSC–068, ¶ 29, 122 N.M. 596, 930 P.2d 131. In *Cleve,* we held: "Like the comprehensive Motor Vehicle Code addressed in *Yarborough,* . . . we believe the comprehensive nature of the game and fish laws with respect to hunting activity demonstrates a legislative intent to preempt application of Section 30–18–1 to the hunting of game animals."

{32} In *Yarborough,* we held: "We agree with amici that the history of this statute leads to the conclusion that the legislature intended to preempt involuntary manslaughter when the predicate offense is a misdemeanor contained within the Motor Vehicle Code."

{33} The majority opinion does not overrule either *Yarborough* or *Cleve.* Therefore they are controlling here and, since they are, the end result in the majority opinion cannot be reached.

{34} In this case, we see the same situation as in *Yarborough.* Child abuse does not require the use of a vehicle but when the predicate offense is a misdemeanor contained within the Motor Vehicle Code (reckless driving) the Motor Vehicle Code must preempt the charge of child abuse. I see no difference in the preemption rule simply because the felony here is child abuse rather than involuntary manslaughter. That, in my view, is a distinction without a real difference.

{35} In my opinion, the Court of Appeals was correct in applying the general/specific rule of statutory interpretation in this matter.

{36} For these reasons, I respectfully dissent.