2001-NMSC-001

15 P.3d 1233

STATE of New Mexico, Plaintiff–
Petitioner,

v.

Albert JOHNSON, Defendant–Respondent.

State of New Mexico, Plaintiff–
Petitioner,

v.

Chuck Wenger, Defendant–Respondent.

Nos. 25,950, 25,796.

Supreme Court of New Mexico.

Dec. 20, 2000.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Phyllis H. Subin, Chief Public Defender, Thomas DeMartino, Assistant Public Defender, Liane E. Kerr, Albuquerque, NM, for Respondents.

**OPINION**

BACA, Justice.

{1} In these consolidated cases, we are called upon to clarify the offense of driving while intoxicated (DWI) and define its parameters. We granted certiorari pursuant to NMSA 1978, § 34–5–14(B) (1972) in order to review two cases which have been consolidated to address whether the State can charge a defendant with DWI pursuant to NMSA 1978, § 66–8–102 (1997, prior to 1999 amendment) when the defendant is on private property and in actual physical control of a non-moving vehicle. After a careful and in-depth analysis of the applicable statutes, existing case law, and the policy underlying our DWI legislation, we reject any public/private property distinction with respect to the offense of DWI. As such, the State may charge a person who is in actual physical control of a non-moving vehicle with DWI despite the fact that he or she is on private property. Accordingly, we reverse the Court of Appeals' decisions upholding the district court's orders dismissing the charges against the defendants.

**I.**

{2} There are no disputed issues of fact in either of these consolidated cases. The parties have stipulated to the facts in their respective cases as follows. On January 10, 1998, an Aztec police officer responded to a dispatch call that reported an intoxicated driver in a Dodge truck with Texas license plate, RL0408. The officer located the described truck parked on private property with the Respondent, Chuck Wenger, seated in the driver's seat. Although the engine of the vehicle was not running, the key was in the ignition. After conducting the standard field sobriety tests, the officer believed that Mr. Wenger was under the influence of an intoxicating liquor and arrested him for DWI. Mr. Wenger's blood alcohol test results indicated .35 and .34 grams of alcohol in two hundred liters of breath—more than four times the legal limit.

{3} Similarly, on March 15, 1998, a Farmington police officer observed a vehicle parked in the private parking lot of a motel. The officer noticed an individual, later identified as the Respondent, Albert Johnson, sitting in the driver's seat. Mr. Johnson was noticeably nodding his head in an exaggerated manner as if he were extremely fatigued. The vehicle's engine was running, the key was in the ignition, and a large pool of condensation was found under the exhaust pipes, indicating that the car had possibly been at the location for three hours. Observing signs of intoxication, the officer conducted the standard field sobriety tests. As a result of these tests, Mr. Johnson was arrested for DWI. His breath test results indicated a blood alcohol level of .18 and .17—more than twice the legal limit.

{4} Both Mr. Wenger and Mr. Johnson were charged with DWI. The district court found in both cases that, although Mr. Wenger and Mr. Johnson were in actual physical control of their respective vehicles as defined in *Boone v. State*, 105 N.M. 223, 226, 731 P.2d 366, 369 (1986), neither one of them was "operating" their vehicles because the vehicles were not on a public highway as defined by UJI 14–4511 NMRA 2000. Accordingly, the district court held that neither Mr. Wenger nor Mr. Johnson could be charged under Section 66–8–102 for DWI and dismissed the charges against them. In both cases, the State appealed to the Court of Appeals, which upheld the district court's orders. *See State v. Wenger*, 1999–NMCA–092, ¶ 1, 127 N.M. 625, 985 P.2d 1205; *State v. Johnson*, NMCA 20,230, slip op. (Aug. 19, 1999). In *Wenger* the Court of Appeals held that "when a DWI charge is based on 'actual physical control' rather than 'driving,' that offense must take place on a highway as defined by the Motor Vehicle Code." 1999–NMCA–092, ¶ 13, 127 N.M. 625, 985 P.2d 1205 (relying on the definition of "highway" in NMSA 1978, § 66–1–4.8(B) (1991)). In conformity with *Wenger*, the Court of Appeals, by memorandum opinion, upheld the district court's order dismissing the charges against Mr. Johnson. Neither Mr. Wenger nor Mr. Johnson challenge the finding that they were in actual physical control of their vehicles. Likewise, the State agrees that the defendants were on private property at the time of their arrests.

## II.

■ {5} This Court must determine whether the Legislature intended to place a geographical limitation on the offense of DWI depending on the type of activity constituting the "driving" of a vehicle. To resolve this issue we must ascertain and interpret the Legislature's intent in drafting the statutes governing this offense. The standard of review for issues of statutory interpretation and construction is *de novo*. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

■ {6} The issue presented herein necessitates the interpretation of Section 66–8–

102, NMSA 1978, § 66–7–2 (1978), and NMSA 1978, § 66–1–4.4(K) (1991, prior to 1999 amendment). As we engage in our interpretation of these statutes we keep in mind basic rules of statutory construction. "The starting point in every case involving the construction of a statute is an examination of the language utilized by [the Legislature]" in drafting the pertinent statutory provisions. *State v. Wood*, 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct.App.1994). "When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990); *accord State v. Shije*, 1998–NMCA–102, ¶ 6, 125 N.M. 581, 964 P.2d 142. The plain meaning rule, however, is only a guideline for determining the legislative intent. *Junge v. John D. Morgan Constr. Co.*, 118 N.M. 457, 463, 882 P.2d 48, 54 (Ct.App.1994). It is the responsibility of this Court to search for and effectuate the purpose and object of the underlying statutes. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). These statutes should be harmonized and construed together when possible, in a way that facilitates achievement of their goals. *See State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 575–76, 855 P.2d 562, 564–65 (1993). Accordingly, we analyze these statutes not only within the statutory scheme of the Motor Vehicle Code but also within the context of the policy underlying the offense of DWI. The purpose of our DWI legislation is to protect the health, safety, and welfare of the people of New Mexico. *See State v. Harrison*, 115 N.M. 73, 77, 846 P.2d 1082, 1086 (Ct.App.1992); *see also Incorporated County of Los Alamos v. Johnson*, 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989). We must adhere to this policy as we analyze the applicable statutory provisions.

## III.

{7} Our interpretation of the relevant statutory provisions leads us to the conclusion that there is no public/private property distinction in our DWI law. Section 66–8–102 states in pertinent part: "It is unlawful for any person who is under the influence of

intoxicating liquor to drive any vehicle *within this state.*" Section 66–8–102(A) (emphasis added). The only geographical limitation to the offense of DWI is found in the operative words "within this state." The plain meaning of "within this state" is quite broad and does not specify a distinction between public and private property in the interior of the State of New Mexico. We cannot ignore the Legislature's choice of words, especially when the Legislature has used more specific phraseology when it has intended to limit the reach of a statute. *See, e.g.,* NMSA 1978, § 66–8–114 (1978) (prohibiting careless driving "on the highway"); *State v. Brennan,* 1998–NMCA–176, ¶¶ 5–6, 126 N.M. 389, 970 P.2d 161 (holding that, unlike the offense of DWI, careless driving is prohibited on highways alone). In general, therefore, the DWI statute has no geographical limitation and applies to both public and private property.

{8} Moreover, the Legislature further defined the scope of Section 66–8–102 in Section 66–7–2. Section 66–7–2(A) provides the general geographical limitation: "The provisions of Article 7 of Chapter 66 NMSA 1978, relating to the operation of vehicles, refer exclusively to the operation of vehicles upon highways, except where a different place is specifically referred to in a given section." Section 66–7–2(B), which by its express terms applies to DWI, provides an exception to the general geographical limitation: "The provisions of Section[ ] ... 66–8–102 ... shall apply upon highways and *elsewhere throughout the state.*" (Emphasis added.) "Highway" is defined as "every way or place generally open to the use of the public as a matter of right for the purpose of vehicular travel, even though it may be temporarily closed or restricted for the purpose of construction, maintenance, repair or reconstruction." NMSA 1978, § 66–1–4.8(B) (1991). By providing a definite exception in Section 66–7–2(B), the Legislature clearly intended to prohibit DWI in a geographical area that reached beyond that falling within the definition of "highway." Analyzing these statutes together, therefore, we find that a person can violate Section 66–8–102 on public as well as private property. This interpretation is consistent with other jurisdictions which have determined that "elsewhere" encompasses both public and private property. *See, e.g., Lunceford v. City of Northport,* 555 So.2d 246, 247 (Ala.Crim.App.1988); *State v. Budden,* 226 Kan. 150, 595 P.2d 1138, 1141 (1979); *Rettig v. State,* 334 Md. 419, 639 A.2d 670, 673–74 (1994).

{9} The Respondents ask us to go one step further in the interpretation of these statutes and request that this Court find a public/private distinction based on the type of activity that constitutes "driv[ing]" under Section 66–8–102. It is well settled that a defendant can be charged with DWI under this section if: (1) the defendant is intoxicated and driving a moving vehicle on a public highway, *see, e.g., State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 632, 904 P.2d 1044, 1057 (1995); (2) the defendant is intoxicated and driving a moving vehicle on a private street or private property, *see State v. Richardson,* 113 N.M. 740, 741, 832 P.2d 801, 802 (Ct.App.1992); or (3) the defendant is intoxicated and is in actual physical control of a non-moving vehicle on a public highway, *see Boone,* 105 N.M. at 226, 731 P.2d at 369; *see also State v. Tafoya,* 1997–NMCA–083, ¶ 5, 123 N.M. 665, 944 P.2d 894; *Harrison,* 115 N.M. 73, 846 P.2d 1082. These consolidated cases trigger the last remaining possible prong of the offense of DWI—whether a defendant can be charged with a violation of the DWI statute if he or she is intoxicated and in actual physical control of a non-moving vehicle on private property. The Respondents argue that when a person is on private property a distinction should be drawn between actual physical control and driving. They assert that on private property, actual physical control of a non-moving vehicle is not sufficient to support the State charging a defendant with DWI.

{10} The express provisions of Section 66–8–102 provide no distinction between "actual physical control" and "driving" based on the location of its occurrence. The Respondents, however, base their contentions on this Court's analysis in *Boone,* 105 N.M. at 225–26, 731 P.2d at 368–69, and UJI 14–4511. *Boone* addressed whether motion of a vehicle is a necessary element of the offense of DWI. 105 N.M. at 224, 731 P.2d at 367. The defendant in *Boone* was charged with DWI pursuant to Section 66–8–102 when he was

discovered in the driver's seat of his automobile, stopped in a traffic lane late at night with the vehicle's engine running and the lights off. *Id.* This Court held that "the offense of DWI under Section 66–8–102 does not require motion of the vehicle; the offense is committed when a person under the influence drives or is in actual physical control of a motor vehicle." *Id.*

{11} In reaching this holding, this Court concluded, as a matter of law, that the meaning of "drive" in Section 66–8–102 is unclear and therefore relied on the statutory provision defining the term "driver," currently Section 66–1–4.4(K),[1] to interpret the meaning of the term "drive" in the DWI statute. *See id.* at 225, 731 P.2d at 368. Section 66–1–4.4(K) states:

> "driver" means every person who *drives or is in actual physical control* of a motor vehicle, including a motorcycle, *upon a highway,* who is exercising control over or steering a vehicle being towed by a motor vehicle or who operates or is in actual physical control of an off-highway motor vehicle[.]

(Emphasis added.) Through reference to this provision, this Court established that "actual physical control" of a vehicle is sufficient to support a DWI conviction.

{12} The Respondents argue that by relying on the definitional statute to support its holding in *Boone,* this Court incorporated the definition of "driver" into Section 66–8–102. Accordingly, they assert that this Court is limited when considering "actual physical control" to activity that takes place "upon a highway." Therefore, relying on this definitional statute, coupled with the fact that they were on private property and not "upon a highway," the Respondents assert they cannot be charged with DWI. The Respondents' analysis, however, is incomplete.

{13} Applying rules of grammar to Section 66–1–4.4(K), the word "drives" and the phrase "actual physical control" are both modified by the phrase "a motor vehicle, including a motorcycle," all of which is in turn modified by the phrase "upon a highway." *See Wilson v. Denver,* 1998–NMSC–016, ¶ 16, 125 N.M. 308, 961 P.2d 153 (applying rules of grammar to statutory construction). Therefore, the term "driver," where it is found throughout the Motor Vehicle Code, generally includes persons who drive a motor vehicle upon a highway and persons who are in actual physical control of a motor vehicle upon a highway. *See* NMSA 1978, § 66–1–4 (1991) (stating, "Sections 66–1–4.1 through 66–1–4.20 ... define terms for general purposes of the Motor Vehicle Code."). Despite the express limitation to "upon a highway" found in this general definitional statute, our analysis does not end here. Instead, we must consider the effect of Section 66–7–2. Section 66–8–102 is among those offenses whose geographical reach is specifically broadened by Section 66–7–2. The Legislature has expressly and specifically provided that Section 66–8–102 "shall apply upon highways and *elsewhere throughout the state.*" Section 66–7–2(B) (emphasis added). Section 66–7–2 does not distinguish between driving and actual physical control and therefore we conclude that this section broadens the geographical reach of Section 66–8–102 to "highways and elsewhere throughout the state" regardless of the conduct which constitutes driving while intoxicated. "When in a specific section of the Motor Vehicle Code a different meaning is given for a term defined for general purposes in Sections 66–1–4.1 through 66–1–4.20 ... the *specific section's meaning and application of them shall control.*" Section 66–1–4(A) (emphasis added). We conclude that Section 66–7–2 is the more specific statute since it refers directly to Section 66–8–102 and acts to clarify its geographical reach. Section 66–1–4.4(K), on the other hand, is the more general non-substantive definitional section which is applicable to all sections of the Motor Vehicle Code and only acts to assist in defining general terms found throughout the Code. Because these statutes cannot be harmonized in a way that reflects the intent of the Legislature, we hold that Section 66–7–2, as the specific statute,

---

1. In 1986, when *Boone* was decided, the definitional provision of "driver" was found in NMSA 1978, N.M. Laws, Ch. 35, § 4, which in all pertinent aspects is the same as the current definition found at Section 66–1–4.4(K). To minimize any confusion, we will hereinafter refer to Section 66–1–4.4(K) when discussing the general definition of "driver."

shall control.[2] By relying too heavily on the words "upon a highway" in Section 66–1–4.4(K), the Respondents ignore this critical step in the analysis and, as a result, reach a flawed conclusion.[3]

■ {14} *Boone* supports our conclusion today. This Court recognized the unique nature of the DWI statute in footnote 1 of *Boone*.

> We note that the language in Subsection [66–1–4.4(K)] generally limiting the definition of drivers to persons "upon a highway" does not apply to the offense of DWI. At the time it enacted that definition the Legislature expressly and specifically provided that Section 66–8–102 "shall apply upon highways and elsewhere throughout the state." [Section 66–7–2]. This specific statute will be construed as an exception to the general definitional statute. [Citations omitted.]

105 N.M. at 226 n. 1, 731 P.2d at 369 n. 1. Today, we simply acknowledge the validity of that reasoning and extend the same rationale to define the geographical reach of the DWI statute—an issue not triggered by the facts in *Boone*. As noted in footnote 1 of *Boone*, therefore, the general definitional statute, which limits the definition of "driver" to persons "upon a highway," does not apply to the offense of DWI. Accordingly, we find that Section 66–8–102 applies to private as well as public property, regardless of whether the intoxicated person is driving or in actual physical control of a vehicle.[4]

### IV.

■ {15} The Court of Appeals in *Wenger*, while agreeing with the Respondents' interpretations of the pertinent statutes, also based its holding on UJI 14–4511. 1999–NMCA–092, ¶¶ 14–15, 127 N.M. 625, 985 P.2d 1205. UJI 14–4511 states:

> A person is "operating" a motor vehicle if the person is: [driving the motor vehicle;] [or] [in actual physical control whether or not the vehicle is moving if the vehicle is on a highway;] [or] [exercising control over or steering a vehicle being towed by a motor vehicle;] [or] [in actual physical control of an off-highway motor vehicle].

The committee commentary states:

> Under this instruction anyone under the influence of alcohol or drugs who actually drives a motor vehicle, who exercises control over a vehicle being towed by a motor vehicle, or who operates or is in actual physical control of an off-highway vehicle, anywhere in the state, on the highway or off, is guilty of driving while under the

---

2. Our conclusion is based on express statutory provisions enacted by the Legislature with respect to the offense of DWI. We are not engaging in a general/specific statute analysis as we did in *State v. Cleve*, 1999–NMSC–017, 127 N.M. 240, 980 P.2d 23, and *State v. Guilez*, 2000–NMSC–020, 129 N.M. 240, 4 P.3d 1231. Unlike *Cleve* and *Guilez*, where we analyzed multiple offenses which invoked issues of preemption and double jeopardy, here, we focus only on one statutory offense and a general definitional section of the Motor Vehicle Code.

3. The dissent also relies too heavily on Section 66–1–4.4(K). The crucial distinction between the majority opinion and the dissent is not in the construction of Section 66–1–4.4(K) but in the fact that the dissent places more emphasis on the general definitional statute than on the statutory provisions that more specifically apply to DWI; Sections 66–8–102 and 66–7–2. This construction of Section 66–8–102 more closely effectuates the intent of the Legislature.

4. Our statutory construction does not raise concerns regarding the due process rights of the Respondents. The Respondents had fair warning that their conduct would constitute a violation of Section 66–8–102. The test in determining whether such an interpretation and retroactive application of a statute offends due process is whether the construction actually given the statute was foreseeable. *See Bouie v. City of Columbia*, 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The Court engages in an impermissible interpretation of a statute when the interpretation is "so unexpected, [and] so outlandish, that no reasonable person could have expected it." *Welton v. Nix*, 719 F.2d 969, 970 (8th Cir.1983). We do not engage in such unexpected and outlandish interpretation by concluding that there is no private/public property distinction in our DWI legislation. To the contrary, given the words "within the state" in Section 66–8–102, and "elsewhere throughout this state" in Section 66–7–2, it is quite foreseeable that this Court would interpret the offense of DWI as having no geographical limitations. As such, Mr. Johnson and Mr. Wenger had fair warning that they could be charged with DWI if they were on private property in actual physical control of a non-moving vehicle.

influence. In addition, anyone under the influence of alcohol or drugs who is in actual physical control of a motor vehicle on a street, even if the person is asleep behind the wheel and not actually driving the vehicle, is guilty of driving while under the influence. *See [Boone v. ]State v. Boone,* 105 N.M. 223, 731 P.2d 366 (1986). However, if the person is in physical control of the vehicle, but not actually driving the vehicle, and the vehicle is off the road, that person is not guilty of driving while under the influence.

We recognize that this Court's approval of this jury instruction may have served to confuse matters further. There is "a presumption that the instructions [adopted by this Court from proposals by standing committees of the Court] are correct statements of law." *State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994). Because we have not previously considered UJI 14–4511, however, the Court of Appeals was not bound by the UJI in its interpretations of Section 66–8–102 and had the authority to analyze whether UJI 14–4511 constitutes a correct statement of New Mexico law. *Id.* at 795–96, 867 P.2d at 1177–78; *accord State v. Parish,* 118 N.M. 39, 47, 878 P.2d 988, 996 (1994).

{16} In analyzing UJI 14–4511, the Court of Appeals characterized as dicta our statement in *Boone,* 105 N.M. at 226 n. 1, 731 P.2d at 369 n. 1, that the phrase "upon a highway" from the statutory definition of "driver" does not apply to the crime of DWI, and further determined that UJI 14–4511 "more faithfully reflects the statutory language" than footnote 1 in *Boone. Wenger,* 1999–NMCA–092, ¶ 15, 127 N.M. 625, 985 P.2d 1205. While we agree with the Court of Appeals that footnote 1 in *Boone* was dicta and not binding authority, the Court of Appeals should give such language adequate deference and not disregard it summarily. *See Fields v. D & R Tank & Equip. Co.,* 103 N.M. 141, 144, 703 P.2d 918, 921 (Ct.App.1985). Contrary to the Court of Appeals' analysis, as discussed above, UJI 14–4511 does not faithfully reflect the pertinent statutory language of Sections 66–8–102, 66–7–2, and 66–1–4.4(K). As we have made clear in our earlier discussion, Section 66–8–102 does not create a geographical distinction based on whether an individual is driving or in actual physical control of a vehicle. Moreover, the committee's interpretation of the application of UJI 14–4511 is confusing. Pursuant to the commentary, a person who is in actual physical control of an "off-highway vehicle" can be found guilty of DWI regardless of whether the "off-highway vehicle" is on public or private property. · Conversely, a person can not be found guilty of DWI if he or she is driving a traditional "vehicle," as distinguished from an "offhighway vehicle," if that vehicle is on private property. We have found no case law and can discern no rationale for distinguishing between actual physical control of a traditional "vehicle" and actual physical control of an "off-highway vehicle." *Cf. State v. Padilla,* 1997–NMSC–022, ¶ 9, 123 N.M. 216, 937 P.2d 492 (concluding that the committee commentary for the UJI did "not withstand scrutiny"). Accordingly, we find that UJI 14–4511, and its accompanying commentary is a misstatement of law and, as such, it is disapproved.

## V.

{17} The purpose of our DWI legislation is to protect the public from the risk of harm posed by intoxicated drivers. *See Johnson,* 108 N.M. at 634, 776 P.2d at 1253. "A motor vehicle is regarded as a source of danger when operated carelessly or by one whose responsiveness is diminished by intoxication." *City of Kansas City v. Troutner,* 544 S.W.2d 295, 299 (Mo.Ct.App.1976). Intoxicated drivers place the public, as well as themselves, at risk. *See Harrison,* 115 N.M. at 77, 846 P.2d at 1086. As such, the potential harm that can result is much greater than if the intoxicated driver was the only one in danger. *See id.* Therefore, "the public's interest in deterring individuals from driving while intoxicated is compelling." *Id.* The policy underlying the DWI statute is to "prevent individuals from driving or exercising actual physical control over a vehicle when they, either mentally or physically, or both, are unable to exercise the clear judgment and steady hand necessary to handle a vehicle with safety both to themselves and the public." *Id.; see also Richardson,* 113

N.M. at 742, 832 P.2d at 803. In fact, the public interest and potential harm posed by intoxicated drivers is so compelling that the offense of DWI is a strict liability crime. *See Harrison,* 115 N.M. at 77–78, 846 P.2d at 1086–87.

{18} The Court of Appeals observed that charging intoxicated drivers on highways with DWI and applying the offense to moving vehicles on private property "clearly serves the underlying policies of the DWI statute." *Wenger,* 1999–NMCA–092, ¶ 17, 127 N.M. 625, 985 P.2d 1205. The Court proclaimed, however, that "[t]he application of the DWI statute to stationary vehicles on private ... property would not as clearly serve such purposes." *Id.* Additionally, Respondents argue that "the State's desire to penalize sends the wrong message to the public, for it would encourage drunk drivers, apprehensive about being arrested, to attempt to reach their destination while endangering others on the highway." According to the Respondents, actual physical control of a vehicle is less of a threat to the public than "driving." Accordingly, they conclude that it is reasonable to confine the offense of DWI, when a person is exercising actual physical control of a vehicle, to public highways. Moreover, in their view, it is also reasonable to allow an intoxicated driver to pull completely off the highway to "sleep it off" as long as they are on private property. We disagree.

{19} Although the Respondents do not challenge the finding that they were in actual physical control of their vehicles when they were arrested for DWI, we find it helpful to define "actual physical control" in this case. As our prior case law illustrates, a person is in actual physical control over a vehicle when he or she exercises direct influence over the vehicle. *See, e.g., Boone,* 105 N.M. at 224, 731 P.2d at 367 (upholding a conviction for DWI where the defendant was discovered in the driver's seat of his automobile with the engine running); *State v. Grace,* 1999–NMCA–148, ¶¶ 12–13, 128 N.M. 379, 993 P.2d 93 (finding substantial evidence of "driving activity" where the defendant was "passed out" in the driver's seat of his vehicle with the engine running), *cert. denied,* 128

N.M. 149, 990 P.2d 823 (1999); *State v. Rivera,* 1997–NMCA–102, ¶¶ 2–5, 124 N.M. 211, 947 P.2d 168 (finding sufficient evidence to support a conviction of DWI where the defendant was found unconscious or asleep at the wheel of his car in the front yard of his house with the car's engine running); *Tafoya,* 1997–NMCA–083, ¶¶ 2–5, 123 N.M. 665, 944 P.2d 894 (upholding a conviction of DWI where the defendant was in a parked vehicle that was inoperable, asleep at the wheel, with the key in the ignition, and the engine not running); *Harrison,* 115 N.M. at 74, 846 P.2d at 1083 (finding substantial evidence to support a DWI conviction where the defendant was discovered unconscious or asleep at the wheel of the automobile, with the engine on, even though the tires were blocked). We find that the clear purpose of the "actual physical control" element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle. *Cf. City of Cincinnati v. Kelley,* 47 Ohio St.2d 94, 351 N.E.2d 85, 86–87 (1976) (defining "actual physical control" as being physically capable of starting the engine and causing the vehicle to move).

{20} A person under the influence of intoxicating liquor or drugs who exerts actual physical control over a vehicle, is a threat to the safety and welfare of the public. *See Harrison,* 115 N.M. at 76, 846 P.2d at 1085. We recognize that the threat might not be as great as it would be if the intoxicated person was actually driving the vehicle, but a substantial danger to the public still exists. The Court of Appeals in *Harrison* recognized this danger when it stated that "there is a legitimate inference to be drawn that [the defendant] placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away." *Id.* (quoting *Hughes v. State,* 535 P.2d 1023, 1024 (Okla.Crim.App.1975)). We do not believe, therefore, that the Legislature intended to limit the application of the element of actual physical control in the DWI statute to public highways.

{21} There is no significant difference between the danger posed by an intoxicated

person in actual physical control of a vehicle on a public highway and that posed by an intoxicated person in actual physical control of a vehicle on private property. Physical control is a necessary prelude to the operation of a vehicle. *See Troutner,* 544 S.W.2d at 299. As such, it is just as important to regulate physical control of a vehicle on private property as it is on a public highway, especially since there is a widespread use of motor vehicles, not only on highways, but in shopping centers and other places that are private yet open to the public. *See, e.g., Cook v. State,* 220 Ga. 463, 139 S.E.2d 383, 384–85 (1964) (finding that the extensive use of private property by the public indicates a need to protect the public from drunk drivers on places other than public streets and highways). Accordingly, it is necessary for the promotion of public safety to interpret the offense of DWI in its entirety to extend to public as well as private property.

{22} The Court of Appeals and the Respondents assert that punishing intoxicated persons who are in actual physical control of a non-moving vehicle on private property would encourage those persons to commence or continue driving even though they felt impaired. We recognize the rationale behind the policy advanced by the Court of Appeals and the Respondents. We believe, however, that encouraging intoxicated drivers to pull completely off the public highway in search of private property when the driver decides he or she is too impaired to continue driving, may pose a greater risk to the public than allowing the driver to simply pull over to the shoulder of the highway. As the Court of Appeals acknowledged, and prior case law holds, allowing an intoxicated person to exercise actual physical control of a non-moving vehicle on a public highway is not in the best interest of public safety. *See Harrison,* 115 N.M. at 76, 846 P.2d at 1085. We do not believe, therefore, that the underlying goal of protecting the public from intoxicated drivers is served by distinguishing between public highways and private property. Public safety is best advanced by deterring impaired persons from driving or placing themselves in a position of actual physical control of their vehicles in the first instance since such control frequently leads to movement of the vehicle, placing the community at risk of severe harm.

{23} Intoxicated drivers have options other than exerting actual physical control over their vehicles. Intoxicated persons can elect a designated driver, or call a friend, family member, or taxi to drive them home. They need not place the public and themselves at risk at all. We cannot place the safety of the public in the hands of drivers whose decision making process is impaired by intoxicating liquor, and allow them to decide the severity of their impairment and the risk to the public of their commencing or continuing driving. We conclude, therefore, that the Legislature did not intend to distinguish between DWI offenses on public property and those on private property, regardless of whether the person was driving or in actual physical control of their vehicle.

{24} Therefore, we hold that the State may charge a person with DWI pursuant to Section 66–8–102, despite the fact that the defendant is found on private property in actual physical control of a non-moving vehicle. As a result, we reverse the Court of Appeals' opinion in *Wenger,* 1999–NMCA–092, 127 N.M. 625, 985 P.2d 1205 and memorandum opinion in *Johnson,* NMCA 20,230, disapprove UJI 14–4511 and its accompanying committee commentary, reverse the district court's orders dismissing the charges against Mr. Wenger and Mr. Johnson and order that the charges be reinstated.

{25} **IT IS SO ORDERED.**

SERNA, and MAES, JJ., concur;
MINZNER, C.J and FRANCHINI, J., (dissenting).

**MINZNER, Chief Justice (dissenting)**

{26} I respectfully dissent. I would affirm the formal opinion of the Court of Appeals in *State v. Wenger,* 1999–NMCA–092, 127 N.M. 625, 985 P.2d 1205, and the memorandum opinion of the Court of Appeals in *State v. Johnson,* No. 20,230, slip op. (NMCA Aug. 19, 1999). Affirming the Court of Appeals' opinion would allow us to reconcile almost all of what has been written by an appellate court in this state on the issues the appeal

raises and also to give some meaning to all of the language in the relevant statutes.

{27} The State has argued that under the Court of Appeals' analysis, NMSA 1978, § 66–7–2 (1978) becomes meaningless. I respectfully disagree with this argument. Section 66–7–2(B) states, in part, that NMSA 1978, § 66–8–102 (1997, prior to 1999 amendment) applies upon highways and elsewhere throughout the state. Under the Court of Appeals' analysis, Section 66–8–102 *does* apply elsewhere throughout the state; it applies elsewhere throughout the State when the defendant is found to have been driving, rather than only in actual physical control.

{28} The majority concludes that the Court of Appeals erred in construing the "upon a highway" language of NMSA 1978, § 66–1–4.4(K) (1991, prior to 1999 amendment) to modify "in actual physical control" but not "drives."

Applying rules of grammar to Section 66–1–4.4(K), the word "drives" and the phrase "actual physical control" are both modified by the phrase "a motor vehicle, including a motorcycle," all of which is in turn modified by the phrase "upon a highway."

*See* Majority Opinion, ¶ 13. I respectfully disagree with this conclusion.

{29} We have previously explained that in construing statutes, "[R]elative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." *Hale v. Basin Motor Co.*, 110 N.M. 314, 318, 795 P.2d 1006, 1010 (1990) (quoted authority omitted). Applying this rule of statutory interpretation, known as the last antecedent rule, we held that under a statute requiring an automobile seller to disclose whether there has been an "alteration or chassis repair due to wreck damage," the phrase "due to wreck damage" only modifies the immediately preceding phrase "chassis work." *Id.* at 317, 795 P.2d at 1009.

{30} Section 66–1–4.4(K) states:

"driver" means every person who drives or is in actual physical control of a motor vehicle, including a motorcycle, upon a highway, who is exercising control over or steering a vehicle being towed by a motor vehicle or who operates or is in actual physical control of an off-highway motor vehicle.

Applying the last antecedent rule to the definition of driver under Section 66–1–4.4(K), the phrase "upon a highway" modifies the term "motor vehicle," which in turn modifies the phrase "in actual physical control." The term "motor vehicle" does not modify the term "drives." *See Hale,* 110 N.M. at 318, 795 P.2d at 1010 ("As a rule of construction, the word "or" should be given its normal disjunctive meaning unless the context of a statute demands otherwise.") (citations omitted). Therefore, I conclude that a person who drives while intoxicated anywhere within the State of New Mexico is guilty of the offense of driving while intoxicated. I also conclude that an intoxicated person who is in actual physical control of a motor vehicle upon a highway is guilty of the offense of driving while intoxicated, but an intoxicated person who is in actual physical control of a motor vehicle that is not located upon a highway has not committed the offense of driving while intoxicated.

{31} The commentary to our uniform jury instruction, NMRA 2000 UJI 14–4511, seems to me to rely on this distinction between "driving" and being in "actual physical control," and to make a relatively coherent scheme of our statute and cases. The committee commentary accompanying UJI 14–4511 provides that:

if the person is in physical control of the vehicle, but not actually driving the vehicle, and the vehicle is off the road, that person is not guilty of driving while under the influence.

The Court of Appeals, in relying on the statutory distinction between "driving" and "actual physical control" and our uniform jury instruction, seems to me to make an appropriate choice in statutory interpretation.

{32} Any other statutory construction in light of our cases seems to me to present constitutional concerns regarding the due process rights of the Defendants. "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct

that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

{33} Prior to our decision in this case, neither the statutory language of Section 66–8–102(A) nor any of our prior holdings would have informed a defendant that being in actual physical control of a motor vehicle, while intoxicated, when the vehicle is not located on a highway is an illegal act. The sole potential basis upon which notice might be premised is the dicta in footnote 1 of *Boone*, stating that the Court did not believe that the language generally limiting the definition of "drivers" to persons "upon a highway" applies to the offense of DWI. 105 N.M. 223, 226, n. 1, 731 P.2d 366, 369, n. 1 (1986). *Boone* was decided prior to *Hale*. Under *Hale*, "upon a highway" does not modify "drives" as the *Boone* court appears to have believed. Our adoption of UJI 14–4511 seems to me to have been a recognition by this Court that the footnote in *Boone* no longer had any effect.

{34} In addition, I have concerns about whether *Boone* was correctly decided. Section 66–8–102(A) provides:

It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state.

{35} In *Boone*, we stated that the DWI statute is ambiguous because the meaning of "drive" is unclear. 105 N.M. at 225, 731 P.2d

at 368 (1986). In order to determine the contours of the term "drive" we looked to the Legislature's definition of "driver." *Id.* at 226, 731 P.2d at 369. The Court decided that the term "drive" should apply coextensively with the term "driver," and thereby included the conduct of a driver who was in actual physical control of a motor vehicle upon a highway.

{36} The Court's logic in so holding is unclear. The term "driver" includes persons who drive *or* are in actual physical control of a motor vehicle. The Legislature's usage of the conjunction "or" between "drives" and "in actual physical control" seems a strong indication that the Legislature did not consider the term "drives" to include "in actual physical control." To conclude that the term "drives" is coextensive with the statutory definition of "driver" and thus includes all situations where a driver is in actual physical control of a vehicle seems to me to require something more than the statutory analysis we performed in *Boone*. Perhaps we should never have equated the two terms and instead should have restricted our remarks to stating that the seriousness of the DWI problem in our state justified equating the two terms, but that such a task "requires legislative therapy, not judicial surgery." *State v. Leiding*, 112 N.M. 143, 146, 812 P.2d 797, 800 (Ct.App.1991).

{37} For these reasons, I would affirm.

FRANCHINI, J., concurs.